**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| GW ACQUISITION CO., LLC, | |
| Plaintiff/Counterclaim Defendant, | Case No.: 1:22-cv-255 (LMB/JFA) |
| v. | |
| PAGELAND LIMITED LIABILITY COMPANY, et al., | |
| Defendants/Counterclaim Plaintiffs/Third-Party Claim Plaintiffs, | |
| v. | |
| MAGLANDBROKER, LLC, et al., | |
| Third-Party Defendants. | |

**DEFENDANTS PAGELAND LLC'S AND BARBARA BROWER'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT OR, <u>IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>**

Anthony T. Pierce, VSB No. 27862
Miranda A. Dore, VSB No. 92891
Abigail K. Kohlman, VSB No. 86590
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, NW
Washington, D.C. 20006
Tel: (202) 887-4000
Fax: (202) 887-4288
Email: apierce@akingump.com
         mdore@akingump.com
         akohlman@akingump.com

*Counsel for Defendants/Third-Party Claim Plaintiffs Pageland LLC, Barbara Brower, and Jon Sanders Brower*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS .................................................4

    I.      Background ............................................................................................4

    II.     Plaintiff GWA's Claims .......................................................................6

    III.    This Action ...........................................................................................11

ARGUMENT .....................................................................................................................13

    I.      The Court No Longer Has Subject Matter Jurisdiction Over Plaintiff's

          Claims for Specific Performance and Declaratory Judgment...............................13

          A.     Legal Standard for Rule 12(b)(1)..................................................13

          B.     Plaintiff's Specific Performance and Declaratory Judgment Claims

                Are Moot .......................................................................................14

          C.     Declaratory Relief Will Not Serve a Useful Purpose in Clarifying

                or Settling the Legal Issues, Nor Will It Afford Relief from

                Uncertainty or the Controversy That Gave Rise to the Proceeding...........17

    II.     Plaintiff's Claims for Breach of Contract and Breach of the Covenant of

          Good Faith and Fair Dealing Fail to State a Claim Upon Which Relief Can

          Be Granted ...........................................................................................19

          A.     Legal Standards for Rule 12(b)(6), 12(d), and Rule 56 ...........................19

          B.     Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted

                Because Plaintiff Has Not Alleged Actual Damages nor Can It

                Show Damages for Any of Its Remaining Claims ....................................20

CONCLUSION....................................................................................................................27

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Adams v. Bain*,
  697 F.2d 1213 (4th Cir. 1982) ....................................................................13, 14

*Aetna Cas. & Sur. Co. v. Quarles*,
  92 F.2d 321 (4th Cir. 1937) ...............................................................................17

*Alig v. Quicken Loans, Inc.*,
  No. 5:12-CV-114, 2017 WL 5054287 (N.D. W. Va. July 11, 2017) ....................21

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).............................................................................................20

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006).............................................................................................13

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1997)...............................................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................19

*Bagley v. Wells Fargo Bank, NA.*,
  No. 3:12-cv-617, 2013 WL 350527 (E.D. Va. Jan. 29, 2013)...............................26

*Bailey v. Potter*,
  No. 1:05-cv-936 (JCC), 2006 WL 1582410 (E.D. Va. June 5, 2006) ........20, 22, 24

*Battle v. Whitehurst*,
  831 F. Supp. 522 (E.D. Va. 1993) ..................................................................15, 17

*Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*,
  235 F. Supp. 2d 485 (E.D. Va. 2002) .............................................................17, 18

*Burke v. Nationstar Mortg., LLC*,
  No. 3:14-cv-837, 2015 WL 4571313 (E.D. Va. July 28, 2015).............................26

*Carmen's Corner Store v. Small Bus. Admin.*,
  520 F. Supp. 3d 726 (D. Md. 2021)....................................................................14

*Carolina Power & Light Co. v. Dynegy Mktg. & Trade*,
  415 F.3d 354 (4th Cir. 2005) ..............................................................................23

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)........................................................................................19, 21

*Centripetal Networks, Inc. v. Palo Alto Networks, Inc.*,
No. 2:21-cv-137 (RCY), 2022 WL 610176 (E.D. Va. Mar. 1, 2022)......................................24

*Chemeon Surface Tech. v. Metalast Int'l, Inc.*,
No. 3:15-cv-00294-CLB, 2021 WL 694815 (D. Nev. Feb. 23, 2021)...................................25

*DeFunis v. Odegaard*,
416 U.S. 312 (1974) (per curiam) ........................................................................................15

*Dennis v. Columbia Colleton Med. Ctr., Inc.*,
290 F.3d 639 (4th Cir. 2002) ...............................................................................................19

*Enomoto v. Space Adventures, Ltd.*,
624 F. Supp. 2d 443 (E.D. Va. 2009) ...................................................................................26

*Eplus Tech., Inc. v. Nat'l R.R. Passenger Corp.*,
407 F. Supp. 2d 758 (E.D. Va. 2005) ...................................................................................25

*Filak v. George*,
594 S.E.2d 610 (Va. 2004)..............................................................................................20, 21

*Francis v. Giacomelli*,
588 F.3d 186 (4th Cir. 2009) ...............................................................................................19

*Friedman's, Inc. v. Dunlap*,
290 F.3d 191 (4th Cir. 2002) ...............................................................................................15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000).......................................................................................................13, 14

*In re Global Computer Enterprises, Inc.*,
No. 14-13290-BFK, 2017 WL 3580171 (Bankr. E.D. Va. Aug. 15, 2017)...........................25

*Greenwood Assocs., Inc. v. Crestar Bank*,
248 Va. 265, 448 S.E.2d 399 (1994).....................................................................................26

*Hamlet v. Hayes*,
641 S.E.2d 115 (Va. 2007).....................................................................................................20

*Harrison v. U.S. Bank Nat'l Ass'n*,
No. 3:12-cv-00224, 2012 WL 2366163 (E.D. Va. June 20, 2012).........................................26

*Hazaimeh v. U.S. Bank Nat. Ass'n*,
94 F. Supp. 3d 741 (E.D. Va. 2015) ................................................................................26, 27

*HCP Laguna Creek CA, LP v. Sunrise Senior Living Mgmt., Inc.*,
737 F. Supp. 2d 533 (E.D. Va. 2010) ...................................................................................21

*Herrera v. Finan*,
709 Fed. App'x 741 (4th Cir. 2017) ...........................................................14

*Jones v. Fulton Bank, N.A.*,
565 F. App'x 251 (4th Cir. 2014) ...........................................................26

*Joyce v. Lincoln Nat'l Life Ins. Co.*,
845 F. Supp. 353 (E.D. Va. 1993) ...........................................................25

*Kassner v. Kadlec Reg'l Med. Ctr.*,
No. CV-11-5114-RMP, 2012 WL 523675 (E.D. Wash. Feb. 15, 2012) ................20

*Kerns v. U.S.*,
585 F.3d 187 (4th Cir. 2009) ...........................................................14

*Klicos Painting Co. v. Saffo Contractors, Inc.*,
No. JFM-15-02505, 2017 WL 3976625 (D. Md. Sept. 6, 2017) ........................21

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ...........................................................13

*Long v. Pekoske*,
38 F.4th 417 (4th Cir. 2022) ...........................................................17

*Minn. Laws. Mut. Ins. Co. v. Batzli*,
442 Fed. App'x 40 (4th Cir. 2011) ...........................................................21, 23

*Morefield v. Bailey*,
959 F. Supp. 2d 887 (E.D. Va. 2013) ...........................................................19

*News Leader Co. v. Kocen*,
3 S.E.2d 385 (Va. 1939) ...........................................................21

*Nguti v. Safeco Ins. Co.*,
No. PX-15-742, 2017 WL 2778821 (D. Md. June 27, 2017) ...........................20, 21

*Nicholson v. Shockey*,
64 S.E.2d 813 (Va. Ct. App. 1951) ...........................................................24

*Orebaugh v. Antonious*,
58 S.E.2d 873 (Va. 1950) ...........................................................21, 22, 24

*Preiser v. Newkirk*,
422 U.S. 395 (1975) ...........................................................17

*Powell v. McCormack*,
395 U.S. 486 (1969) ...........................................................14

iv

*Qimonda AG v. LSI Corp.*,
  875 F. Supp. 2d 570 (E.D. Va. 2012) ..............................................................13, 14

*Rogers v. Deane*,
  992 F. Supp. 2d 621 (E.D. Va. 2014) ..............................................................25, 26

*Sierra Club v. United States Army Corps of Engineers*,
  981 F.3d 251 (4th Cir. 2020) ................................................................................13

*Southern Pacific Terminal Co. v. ICC*,
  219 U.S. 498 (1911)...............................................................................................15

*Studco Building System U.S., LLC v. 1st Advantage Federal Credit Union*,
  509 F. Supp. 3d 560 (E.D. Va. 2020) ...................................................................19

*Suarez Corp. Indus. v. McGraw*,
  125 F.3d 222 (4th Cir. 1997) ................................................................................15

*United States v. Westbrooks*,
  780 F.3d 593 (4th Cir. 2015) ................................................................................25

*Vitol, S.A. v. Primerose Shipping Co.*,
  708 F.3d 527 (4th Cir. 2013) ................................................................................19

*Wicomico Nursing Home v. Padilla*,
  910 F.3d 739 (4th Cir. 2018) ................................................................................19

## RULES

Fed. R. Civ. P.
  12(b)(1) ..........................................................................................1, 4, 13, 14, 28
  12(b)(6) .................................................................................................... passim
  12(d).........................................................................................................1, 19
  54(d)(2) ...........................................................................................................23
  56.............................................................................................................. passim

Local Civil Rules 7 and 56.............................................................................1

## STATUTES

Uniform Commercial Code (U.C.C.).............................................................26

Va. Code
  § 8.9A-109 ..................................................................................................26, 27

**DEFENDANTS PAGELAND LLC'S AND BARBARA BROWER'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

After dismissing Defendant Jon Sanders Brower ("Mr. Brower") in his individual capacity and its tortious interference claim against Mr. Brower for lack of any evidence of wrongdoing, Plaintiff GW Acquisition Co., LLC ("Plaintiff" or "GWA") nonetheless chose to continue its lawsuit, despite suffering no damage and after receiving the requested rezoning form signatures through an *ex parte* restraining order.  Therefore, Defendants Pageland Limited Liability Company ("Pageland LLC") and Barbara Brower (collectively "Defendants" or "Sellers") are entitled to dismissal of GWA's lawsuit or, in the alternative, judgment as a matter of law on GWA's claims for relief because no genuine issue as to any material fact exists.  Sellers respectfully move the Court pursuant to Rules 12(b)(1), 12(b)(6), 12(d), and Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rules 7 and 56 for an order granting dismissal of GWA's claims or, in the alternative, for summary judgment in favor of Sellers regarding all Counts in GWA's First Amended Complaint (hereinafter "Amended Complaint").[2]  In support of this motion, Sellers rely on this Brief in Support, Statement of Material Facts ("SOF"), Declaration of Jon Sanders Brower (Exhibit 1), and attached Exhibits.

## INTRODUCTION

On March 8, 2022, Plaintiff filed its Verified Complaint against Pageland LLC, Jon Sanders Brower and Barbara Brower asserting several causes of action related to the Purchase and Sale Agreements that Pageland LLC and Barbara Brower entered into with Plaintiff (hereinafter

---

[2] Sellers file this Motion as their Fed. R. Civ. P. 12 response to the Amended Complaint. To the extent an answer to any of the allegations in the Amended Complaint is required, Sellers incorporate their prior May 6, 2022 answer, counterclaim, and third-party complaint (Dkt. No. 36), and move for dismissal of the Amended Complaint or, in the alternative, for summary judgment in their favor on the grounds stated herein.

"Pageland Purchase Agreement" and "Brower Purchase Agreement").  SOF ¶ 30.  On the same day, Plaintiff also filed a Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion"), seeking an Order requiring Pageland LLC and Barbara Brower to comply with the Pageland Purchase Agreement and Brower Purchase Agreement, or in other words, requesting that the Court grant the relief Plaintiff continues to seek in its First, Second, Third, and Fourth "Claims for Relief" listed in its Amended Complaint.  SOF ¶ 31.  On March 18, 2022, at an *ex parte* hearing on Plaintiff's TRO Motion, Plaintiff obtained that relief when, on March 23, 2022, the Court ordered Pageland LLC and Barbara Brower to complete and sign all of the requested Rezoning Forms.  SOF ¶ 33.  Shortly thereafter, on March 28, 2022, Mr. Brower executed the Rezoning Forms and an amendment to the Pageland Purchase Agreement.  SOF ¶ 34.

Despite obtaining everything it is now asking for by March 28, 2022, Plaintiff GWA continues to seek relief from Pageland LLC and Barbara Brower for Mr. Brower not executing the Rezoning Forms by February 28, 2022 that Plaintiff presented to him through Mr. Brower's broker and Third-Party Defendant Mary Ann Ghadban.  However, Plaintiff has openly admitted (but failed to apprise the Court in its Amended Complaint) that not only has it obtained the relief it requested, it has not suffered—nor alleged that it suffered—any actual damages stemming from Mr. Brower's purported offensive conduct.  Moreover, Plaintiff conveniently omitted from its discovery responses that, contrary to allegations in its original and Amended Complaint, February 28, 2022 was *not* the date on which it "was required to file its application for Data Center Rezoning" (Am. Compl. ¶ 19, Dkt. 100) because Plaintiff drafted and submitted to each Phase 1 and Phase 2 seller, via the sellers' broker and Third-Party Defendant Mary Ann Ghadban, a Master Amendment to the Pageland Purchase Agreement that would have extended the time to file the rezoning application to April 15, 2022.  SOF ¶¶ 17-19; Exhibit 2, February 18, 2022 Email from Mary Ann Ghadban

attaching Master Amendment.  Furthermore, Plaintiff failed to disclose in its discovery that it contemplated a mid-to-late April extension of the time to file its rezoning application as far back as January 26, 2022, and perhaps even earlier given that these extensions were necessary to cure title issues for two other assemblage sellers.   SOF ¶ 17; Exhibit 3, January 27, 2022 Email from Kate Hauber; Exhibit 4, March 7, 2022 Email from Kate Hauber.  Of course, Plaintiff has not sued these sellers for breach of the covenant of good faith and fair dealing as it has Pageland LLC and Barbara Brower.

Importantly, the Court can grant Plaintiff no further relief because (1) the Court has already ordered specific performance via the March 23, 2022 Temporary Restraining Order ("TRO") (Dkt. No. 24) and Mr. Brower, on behalf of Pageland LLC and Barbara Brower, has already complied and provided the necessary rezoning documents that Plaintiff requested; (2) Plaintiff has not alleged, nor has it suffered, any actual or nominal damages because its rezoning application was approved by the Prince William County Planning Commission on September 14, 2022, which the Prince William County Board of County Supervisors ("BOCS") is expected to approve[3]—i.e., Plaintiff's application was never rejected for lack of Mr. Brower's signatures; and (3) Plaintiff cannot maintain an independent breach of the covenant of good faith and fair dealing claim against Sellers because Plaintiff has not alleged, and the evidence does not prove, that Sellers breached the Pageland Purchase Agreement by failing to disclose some defect in the title.

---

[3] *See* Prince William County Planning Commission Resolution, Comprehensive Plan Amendment #CPA2021-00004 PW Digital Gateway Plan Gainesville Magisterial District, available at https://eservice.pwcgov.org/planning/documents/CPA2021-00004.pdf (Sept. 14, 2022) ("Action: Recommend Adoption").

As a result, Plaintiff's claims for specific performance and declaratory judgment should be dismissed under Federal Rules of Civil Procedure 12(b)(1) for lack of jurisdiction. And Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing should be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6) or, in the alternative and based on evidence presented herein, summary judgment should be entered in the Sellers' favor under Rule 56.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

I.  **Background**

1.      Jon Sanders Brower manages Pageland Limited Liability Company, a Virginia limited liability company, and is attorney-in-fact for Barbara Sanders Brower. Joint Pre-Trial Statement ¶¶ 2-3, Dkt. No. 110.

2.      Mr. Brower has a high school education and no previous experience engaging in a complex commercial land acquisition deal as either a seller or purchaser. Brower Decl. ¶ 4.

3.      Barbara Brower is 90 years old and has dementia. Brower Decl. ¶ 3.

4.      On August 19, 2020, on behalf of the Pageland LLC and Barbara Brower, Mr. Brower entered into a Listing and Marketing Agreement with Third-Party Defendants Mary Ann Ghadban and MagLandBroker, LLC for the purpose of listing and marketing the Pageland LLC property located in Prince William County, Virginia. Joint Pre-Trial Statement ¶¶ 4-5, Dkt. No. 110.

5.      Carter Wiley worked with Third-Party Defendants Mary Ann Ghadban and MagLandBroker, LLC as a co-broker under The Wiley Companies for the purpose of marketing the Pageland LLC property together with the Phase 1 and Phase 2 properties. Exhibit 5, Ghadban Depo. Tr. 73:9 – 74:10.

6.      Beginning around August 2020, MagLandBroker contacted various data center users, including QTS Realty Trust, LLC ("QTS")—a GWA affiliate, who it thought might be interested in acquiring an assemblage of approximately 812 acres of real estate in Prince William County, Virginia, which included the Pageland LLC property.  Joint Pre-Trial Statement ¶ 6, Dkt. No. 110.

7.      In November 2020, Ms. Ghadban's co-broker Carter Wiley approached QTS with a proposal to purchase certain real property for the purpose of developing data centers.  *See* Exhibit 6, Nov. 13, 2020 NDA Email; Exhibit 5, Ghadban Depo. Tr. 73:9 – 74:10.

8.      In April 2021, Ms. Ghadban and Mr. Wiley again approached QTS with a proposal to purchase the approximately 812-acre assemblage.  Ms. Ghadban's proposal was to sell the combined 812-acre assembled acreage in two phases: Phase 1 consisting of an assemblage of approximately 342 acres, and Phase 2 consisting of an assemblage of approximately 470 acres (which includes the Pageland LLC property).  Joint Pre-Trial Statement ¶ 7, Dkt. No. 110.

9.      On August 21, 2021, QTS offered to purchase the Phase 1 property for ███████ per acre and the Phase 2 property for ███████ per acre.  The purchase and sale of the Phase 1 and Phase 2 properties are contingent on the final approval of the Comprehensive Plan Amendment by the Prince William County Board of County Supervisors.  Joint Pre-Trial Statement ¶ 13, Dkt. No. 110; Exhibit 7, NAC II, LLC Letter of Intent.

10.     On or about October 27, 2021, Pageland LLC and GWA entered a Purchase and Sale Agreement whereby GWA agreed to purchase and Pageland LLC agreed to sell real property having Prince William County GPIN Numbers 7499-82-1020 and 7499-70-3896, all together comprising approximately 115.789 acres at a price of ███ per acre, equaling a total sale price of approximately ███████, less ██████ per acre for the Pageland Philanthropic Foundation (hereinafter "Pageland Purchase Agreement").   Mr. Brower executed the Pageland Purchase Agreement on behalf of Pageland LLC and Barbara Brower.   Exhibit 8, Pageland Purchase Agreement; Joint Pre-Trial Statement ¶ 16, Dkt. No. 110.

11.     On or about October 27, 2021, Barbara Brower and GWA entered a Purchase and Sale Agreement whereby GWA agreed to purchase and Mr. Brower, on behalf of Ms. Brower, agreed to sell real property having Prince William County GPIN Number 7499-81-6203, all together comprising approximately 16 acres at a price of ██████ per acre, equaling a total sale price of approximately ███████, less ██████ per acre for the Pageland Philanthropic Foundation (hereinafter "Brower Purchase Agreement").   Mr. Brower executed the Brower Purchase Agreement on behalf of Barbara Brower.   Joint Pre-Trial Statement ¶ 17, Dkt. No. 110.

## II.     Plaintiff GWA's Claims

12.     GW Acquisition Co., LLC is a Delaware limited liability company that was formed on October 21, 2021, six days before Mr. Brower executed the Pageland Purchase Agreement and the Brower Purchase Agreement on October 27, 2021.   Joint Pre-Trial Statement ¶ 1, Dkt. No. 110.

13.     Before execution of the Pageland Purchase Agreement and Brower Purchase Agreement, Mr. Brower provided all draft agreements, deeds, titles, and related land records to his attorney, Timothy M. Purnell, and requested that Mr. Purnell review them and provide legal advice with regard to whether Mr. Brower should execute the purchase agreements.   Brower Decl. ¶ 8.

14.     On or about December 2, 2021, GWA's counsel informed Mr. Brower and Mr. Purnell, as legal counsel for Pageland LLC and Barbara Brower, that the title company advised GWA that the property Barbara Brower agreed to sell pursuant to the terms of the Barbara Brower Sale Agreement was not owned by Barbara Brower, but was transferred to Pageland in August 2000.  Joint Pre-Trial Statement ¶ 18, Dkt. No. 110.

15.     Following GWA's discovery that in August 2000 Barbara Brower previously transferred the property that was the subject of the Brower Purchase Agreement, GWA contacted Mr. Purnell to finalize an amendment to the Pageland Purchase Agreement to add the property that was the subject of the Brower Purchase Agreement, as well as to terminate the Brower Purchase Agreement.  Joint Pre-Trial Statement ¶ 19, Dkt. No. 110.

16.     On January 17, 2022, GWA's counsel provided Mr. Brower and Mr. Purnell a draft Amendment of the Pageland Purchase Agreement and Termination of the Barbara Brower Purchase Agreement.  Joint Pre-Trial Statement ¶ 20, Dkt. No. 110.

17.     On January 26, 2022, GWA's outside counsel contacted two other Phase 2 sellers, their attorney, and the title company to provide an update as "to the Purchaser's due diligence work," noting that GWA's counsel "have sent to Mary Ann Ghadban a draft Master Amendment of Purchase and Sale Agreements" to extend "the filing date for rezoning to April 6, 2022."  Exhibit 3, January 27, 2022 Email from Kate Hauber.

18.     On February 15, 2022, on behalf of Barbara Brower and Pageland LLC, Mr. Purnell communicated that the draft Amendment of the Pageland Purchase Agreement and Termination of the Barbara Brower Purchase Agreement contained a typographical error.   Joint Pre-Trial Statement ¶ 21, Dkt. No. 110.

19.     On February 18, 2022, Ms. Ghadban contacted Mr. Brower and Mr. Purnell, notifying them that QTS requested an extension of the project and provided GWA's draft Master Amendment of Purchase and Sale Agreements ("Master Amendment"), which, among other things, revised Section 7.2.1 of the Brower Purchase Agreement and Pageland Purchase Agreement to provide that GWA "shall file its application for Data Center Rezoning not later than April 15, 2022." Ms. Ghadban requested that Mr. Brower execute the Master Amendment for GWA by February 22, 2022. Exhibit 2, February 18, 2022 Email from Mary Ann Ghadban attaching Master Amendment.

20.     On February 19, 2022, Ms. Ghadban emailed to Mr. Brower the Rezoning Forms that needed to be executed by Pageland LLC and Barbara Brower to enable GWA to file its application for Data Center Rezoning and requested return of the same by February 22, 2022. Exhibit 9, February 19, 2022 Email from Mary Ann Ghadban attaching Rezoning Forms.

21.     On or about February 21, 2022, Mr. Brower sought legal advice from an experienced real estate attorney Edward Zughaib regarding the Termination Amendment and Master Amendment to the Pageland Purchase Agreement and the Brower Purchase Agreement that Ms. Ghadban presented to Mr. Brower on behalf of GWA. Exhibit 10, February 23, 2022 Email from Edward Zughaib; Brower Decl. ¶¶ 11-13.

22.     On February 21, 2022, GWA's counsel provided Mr. Brower and Mr. Purnell a revised draft Amendment of the Pageland Purchase Agreement and Termination of the Barbara Brower Purchase Agreement. Joint Pre-Trial Statement ¶ 22, Dkt. No. 110.

23.     On February 27, 2022, GWA's legal counsel sent Pageland LLC and Mr. Purnell a letter via electronic mail and Federal Express Overnight Delivery, requesting Pageland LLC to execute the Rezoning Forms to enable GWA to obtain approval of the CPA and to file its application for Data Center Rezoning on or before February 28, 2022 ("February 27, 2022 Correspondence").  GWA did not withdraw its request that Mr. Brower and the other Phase 1 and Phase 2 sellers execute the Master Amendment that extended the time for GWA to "file its application for Data Center Rezoning [to] not later than April 15, 2022."  Exhibit 2, February 18, 2022 Email from Mary Ann Ghadban attaching Master Amendment; Joint Pre-Trial Statement ¶ 29, Dkt. No. 110.

24.     On the advice of counsel, Mr. Brower did not sign the draft Amendment of the Pageland Purchase Agreement and Termination of the Brower Purchase Agreement, the Master Amendment, or Rezoning Forms prior to GWA filing a lawsuit on March 8, 2022 seeking to enforce the terms of the Brower Purchase Agreements.  Joint Pre-Trial Statement ¶ 31, Dkt. No. 110; Brower Decl. ¶ 13.

25.     Mr. Brower did not understand the material differences between the Master Amendment, which extended the time for GWA to "file its application for Data Center Rezoning [to] not later than April 15, 2022," and the Amendment to the Pageland Purchase Agreement regarding termination of the Brower Purchase Agreement.  Exhibit 2, February 18, 2022 Email from Mary Ann Ghadban attaching Master Amendment; Brower Decl. ¶ 12.

9

26.     On February 28, 2022, GWA, care of QTS Data Centers, filed its initial rezoning applications with the Prince William County Planning Office for the assemblage of properties that comprise the Digital Gateway North (which includes the Pageland LLC property) and the Digital Gateway South.  ("Digital Gateway North" and "Digital Gateway South Applications").  GWA's initial rezoning application filed c/o QTS on February 28, 2022 identified a 0.18 Floor Area Ratio ("FAR") for parcels in Phase 1 and 0.26 FAR for parcels in Phase 2.  Joint Pre-Trial Statement ¶ 32, Dkt. No. 110; Exhibit 11, February 28, 2022 Digital Gateway North and Digital Gateway South Applications.

27.     On March 7, 2022 at 1:43 p.m. Eastern Time, QTS's deputy general counsel sent an email to Third-Party Defendant Mary Ann Ghadban, GWA's outside counsel, other QTS employees and representatives, and Phase 1 seller Thomas Underwood, stating that QTS would approve extending the due diligence period and time to file its rezoning applications to the "end of April."  Exhibit 4, March 7, 2022 Email from Kate Hauber.  GWA's outside counsel responded at 3:40 p.m. Eastern Time, saying "the April 30 deadline would provide the Seller the additional 3-week extension requested by Mr. Underwood."  *Id.*

28.     On March 7, 2022 at 1:54 p.m. Eastern Time, one day before filing this lawsuit on March 8, 2022, GWA's legal counsel sent Mr. Brower and Mr. Purnell a letter via electronic mail and Federal Express Overnight advising Mr. Brower that if he failed to execute the Rezoning Forms on behalf of Pageland LLC and Barbara Brower prior to 6:00 p.m. Eastern Time on that same day, GWA would file a lawsuit seeking compliance with the Pageland Purchase Agreement and Brower Purchase Agreement.  Exhibit 12, March 7, 2022 Correspondence; Joint Pre-Trial Statement ¶ 33, Dkt. No. 110.

29.     On the advice of counsel, Mr. Brower did not sign a Rezoning Form on behalf of Pageland LLC or Barbara Brower in response to the March 7, 2022 Correspondence.  Joint Pre-Trial Statement ¶ 34, Dkt. No. 110; Brower Decl. ¶ 13.

### III.   This Action

30.     On March 8, 2022, GWA filed its Verified Complaint against Pageland LLC, Jon Sanders Brower and Barbara Brower asserting several causes of action, including breach of contract, specific performance, tortious interference with a contract and declaratory judgment. Joint Pre-Trial Statement ¶ 35, Dkt. No. 110.

31.     On March 8, 2022, GWA filed a Motion for Temporary Restraining Order and Preliminary Injunction seeking an Order from the Court requiring Pageland and Barbara Brower to comply with the Brower Purchase Agreements.  Joint Pre-Trial Statement ¶ 36, Dkt. No. 110.

32.     On March 9, 2022, Jon Sanders Brower, Pageland LLC and Barbara Brower were served with GWA's Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion"), together with notice that a hearing on GWA's TRO Motion was set for March 18, 2022.  Joint Pre-Trial Statement ¶ 37, Dkt. No. 110.

33.     On March 18, 2022, Mr. Brower did not appear at the hearing on GWA's TRO Motion.  After the *ex parte* hearing was completed, the Court granted GWA's TRO Motion on March 23, 2022 and ordered Pageland and Barbara Brower to follow and comply with all terms in the Brower Purchase Agreements and to complete and sign all of the rezoning documents.  Joint Pre-Trial Statement ¶ 38, Dkt. No. 110.

34.     On March 28, 2022, after the March 18, 2022 *ex parte* hearing on GWA's Motion for Temporary Restraining Order and entry of the Court's Order requiring Pageland and Barbara Brower to follow and comply with all terms in the Pageland Purchase Agreement and Brower Purchase Agreement and to complete and sign all of the rezoning documents, Mr. Brower executed the Rezoning Forms and the Amendment to Purchase and Sale Agreement and Termination Agreement on behalf of Pageland LLC and Barbara Brower.  Joint Pre-Trial Statement ¶ 39, Dkt. No. 110.

35.     GWA's application for Data Center Rezoning has not been rejected but is still pending before the Prince William County Board of County Supervisors.  Joint Pre-Trial Statement ¶ 40, Dkt. No. 110.

36.     On September 9, 2022, Third-Party Defendant Ms. Ghadban testified that QTS plans to use a substantial portion of the Phase 1 property for designated open space or parks, Exhibit 17, Ghadban Depo. Tr. 40:6 – 44:3, and as a result, QTS plans to build a large portion of its data centers on the Phase 2 property where Pageland LLC's property is located.

37.     On September 14, 2022, the Prince William County Planning Commission voted to recommend approval of the CPA that would provide the necessary rezoning for the PW Digital Gateway.  Exhibit 13, September 14, 2022 Planning Commission Resolution.

38.     On September 12, 2022, Jon Sanders Brower testified that he agreed, and he continues to agree, to actively and fully support and cooperate with GWA in pursuing and obtaining the approval of the Data Center Rezoning and at closing of the Pageland Purchase Agreement. Joint Pre-Trial Statement ¶ 47, Dkt. No. 110.

39.     On September 13, 2022, Mark Westhoff testified on behalf of GWA that it has suffered no damages in relation to its claims for relief contained in GWA's Amended Complaint. Exhibit 14, Westhoff Depo. Tr. 110:12 – 121:12.

## ARGUMENT

### I.     The Court No Longer Has Subject Matter Jurisdiction Over Plaintiff's Claims for Specific Performance and Declaratory Judgment

#### A.     Legal Standard for Rule 12(b)(1)

The federal courts are of "limited jurisdiction," and "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see, e.g.*, *Qimonda AG v. LSI Corp.*, 875 F. Supp. 2d 570, 574 (E.D. Va. 2012) (noting "when considering a 'factual' or 'substantive' challenge to subject matter jurisdiction under Rule 12(b)(1), courts apply the standard associated with motions for summary judgment").  "[T]he burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377; *Sierra Club v. United States Army Corps of Engineers*, 981 F.3d 251, 257 (4th Cir. 2020); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

A motion to dismiss is properly brought under Rule 12(b)(1), and "[t]he objection that a federal court lacks subject-matter jurisdiction [] may be raised at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 500 (2006); *see Adams*, 697 F.2d at 1219.  One such objection under Rule 12(b)(1) is whether an issue is moot.  *See Earley v. U.S. Dep't of Housing and Urban Dev.*, No. 1:21-cv-1437 (RDA/TCB), 2022 WL 2541915, at *10 (E.D. Va. July 7, 2022).  "The doctrine of mootness can be described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).  "[T]he case-or-controversy requirement of Article

13

III may be relaxed at later stages of litigation under a sunk cost rationale." *Qimonda AG*, 875 F. Supp. 2d at 575 (citing *Friends of the Earth*, 528 U.S. at 191-92). However, "[t]h[e] argument from sunk costs does *not* license courts to retain jurisdiction over cases in which one or both of the parties plainly lack a continuing interest." *Id.* (quoting *Friends of the Earth*, 528 U.S. at 192).

In deciding a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) that challenges the facial predicate of subject matter jurisdiction—*i.e.*, that the complaint fails to allege facts sufficient to support a finding that a court has subject matter jurisdiction, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams*, 697 F.2d at 1219). However, when deciding a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) that challenges the factual predicate of subject matter jurisdiction, the court may go beyond the allegations of the complaint to determine if there are facts to support the jurisdictional allegations. *Kerns*, 585 F.3d at 192. Thus, the motion may be treated like a summary judgment motion, *see Qimonda AG*, 857 F. Supp. 2d at 575, and "the presumption of truthfulness normally accorded a complaint's allegations does not apply," *Kerns*, 585 F.3d at 192.

### B.     Plaintiff's Specific Performance and Declaratory Judgment Claims Are Moot

The case or controversy standard must be present "at all stages of review." *Carmen's Corner Store v. Small Bus. Admin.*, 520 F. Supp. 3d 726, 730 (D. Md. 2021) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). Plaintiff GWA cannot satisfy this standard. "[A] case is moot when . . . the part[y] lack[s] a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *accord Herrera v. Finan*, 709 Fed. App'x 741, 745 (4th Cir. 2017) (noting "a case can become moot at any stage of the proceeding"). "When circumstances change from the time the suit is filed to the time of [summary judgment or trial]" and the court can no longer offer effective relief, "the controversy is no longer live and must be

dismissed as moot." *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002) (noting generally that "one such circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim"). A case becomes moot either due to a change in factual circumstances or a change in the law. *See, e.g.*, *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 228 (4th Cir. 1997) (finding claims seeking relief from the state court preliminary injunction were moot because the time for the injunction had expired).

Further, where a litigant has already received the relief he seeks through the court or some other avenue, the action must be dismissed. *See, e.g.*, *Battle v. Whitehurst*, 831 F. Supp. 522, 528 (E.D. Va. 1993) (finding request for injunctive relief moot where the relief sought was already granted). A legal claim is not "capable of repetition, yet evading review," *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911), where the defendant will never again be required to complete the action requested through the relief sought. *See DeFunis v. Odegaard*, 416 U.S. 312, 319 (1974) (per curiam) (finding that petitioner would "never again be required to run the gantlet of the Law School's admission process, so the question presented was "certainly not 'capable of repetition'").

Here, Plaintiff already received the relief that it continues to seek in its claims for specific performance and declaratory judgment, and Mr. Brower will not again be required to complete the same rezoning forms. *See* Am. Compl. ¶¶ 36, 38, 44, 46, 52, 58. First, on February 28, 2022, Plaintiff filed its rezoning applications with the Prince William County Planning Office, and on September 14, 2022 the Planning Commission approved that application[4]—*i.e.*, that application

---

[4] *See* Prince William County Planning Commission Resolution, Comprehensive Plan Amendment #CPA2021-00004 PW Digital Gateway Plan Gainesville Magisterial District, available at https://eservice.pwcgov.org/planning/documents/CPA2021-00004.pdf (Sept. 14, 2022) ("Action: Recommend Adoption").

has not been rejected for any defect like a missing signature from Pageland LLC or Barbara Brower.  SOF ¶¶ 35, 37, 39.  Second, on March 28, 2022, following an *ex parte* hearing on Plaintiff's Motion for Temporary Restraining Order, Mr. Brower as attorney-in-fact for Barbara Brower and manager of Pageland LLC executed the Rezoning Forms that Plaintiff requested in its motion and complaint.  SOF ¶¶ 33-34.  Third, even if the Court were to accept any assertion by Plaintiff that the actions are capable of repetition, on September 13, 2022, Mr. Brower testified at a deposition on behalf of Pageland LLC that, going forward, he would cooperate with Plaintiff in obtaining the final rezoning of the PW Digital Gateway.  SOF ¶ 38; Brower Decl. ¶ 15; Exhibit 15, Brower Depo. Tr. 20:9-18.

Furthermore, the Court cannot order any additional specific performance—whether speculative or actual performance—because Mr. Brower's performance on March 28, 2022 satisfied Plaintiff's relief prayed for in the Amended Complaint.  Similarly, Plaintiff has not invoked any term of the Pageland Purchase Agreement since if first notified Mr. Brower on February 27, 2022—just one day before it submitted its rezoning application—that it may sue Mr. Brower, Pageland LLC, and Mr. Brower's elderly mother, since again threatening suit on March 7, 2022, nor since the filing of its lawsuit on March 8, 2022.  SOF ¶¶ 30-31.  In the seven (7) intervening months between February 2022 and the date of this Motion, Plaintiff has had no occasion to request of Mr. Brower anything even remotely similar to its request to execute the Rezoning Forms because as Plaintiff well knows, its rezoning application has passed one major hurdle to obtaining its rezoning request from Prince William County.  *See* Exhibit 13, September 14, 2022 Planning Commission Resolution.  And Plaintiff eagerly awaits the eventual final vote, which is expected to occur on or about November 1, 2022, approving its major rezoning request

that will enable its affiliate, QTS Data Centers, to begin constructing data centers on the land that

Plaintiff purchased under the Pageland Purchase Agreement.  *See* SOF ¶ 37.

### C. Declaratory Relief Will Not Serve a Useful Purpose in Clarifying or Settling the Legal Issues, Nor Will It Afford Relief from Uncertainty or the Controversy That Gave Rise to the Proceeding

Courts use two factors to determine whether there is a justiciable case or controversy such

that a declaratory judgment may be issued: "(1) whether the judgment will serve a useful purpose

[i]n clarifying and settling the legal relations [at] issue; and (2) whether the judgment will afford

relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Battle*, 831

F. Supp. at 528 n.6 (citing *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

Requests for declaratory judgment "present[] a live controversy only if 'the facts alleged, under

all the circumstances, show that there is a substantial controversy, between parties having adverse

legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment.'" *Long v. Pekoske*, 38 F.4th 417, 423 (4th Cir. 2022) (quoting *Preiser v. Newkirk*, 422

U.S. 395, 502 (1975)).  If there is no live controversy, then the Court lacks subject matter

jurisdiction over Plaintiff GWA's claims for declaratory relief.

A request for declaratory judgment can therefore be dismissed where entry of the judgment

would not change the legal relations between the parties or afford further relief to the party seeking

the judgment.  *See Battle*, 831 F. Supp. at 528 n.6; *Beazer Homes Corp. v. VMIF/Anden

Southbridge Venture*, 235 F. Supp. 2d 485, 494 (E.D. Va. 2002) (dismissing under Rule 12(b)(6)

declaratory judgment request that court declare party to have breached duty of confidentiality and

duty to not market property because it would only be adjudication of past conduct and counsel

conceded that it "would be difficult to do anything with" the declaration, and thus, the requested

declaration "would serve no useful purpose"); *cf. Long*, 38 F.4th at 423 (holding that appellant did

not have a "legally cognizable interest" in request for declaratory judgment that his placement on

17

No Fly List was unlawful given that appellant was removed from list and assurance from appellee that he would not be placed on the list again based on information available to it at that time and thus "[a] declaratory judgment on his past status would . . . have no practical effect").  Therefore, a court will not grant declaratory judgment that would operate contrary to an agreement between the parties that purports to define a legal issue between them.  *See Beazer Homes Corp.*, 235 F. Supp. at 493 (dismissing declaratory judgment request that court declare a letter of intent to still be in effect because, by agreement of the parties, the key elements of the letter had already expired).

Here, the Court should dismiss both of Plaintiff's requests for declaratory judgment "declaring that Barbara Brower [and Pageland] [are] required to execute the Rezoning Applications necessary for GWA to obtain approval of the Data Center Rezoning," Am. Compl. ¶¶ 38, 46, because both requests are identical and the parties' agreement by way of Mr. Brower's deposition testimony satisfies any past or potential future request related to the rezoning applications.  Moreover, actions by the Prince William County Planning Commission approving Plaintiff's rezoning request moot its claim because the rezoning application has not been denied, despite that it was submitted on February 28, 2022 without Mr. Brower's signature.[5]  Further, as explained above, Mr. Brower already signed the Rezoning Forms.  Thus, dismissal of Plaintiff's first and second claims for relief for declaratory judgment are appropriate.

---

[5] Sellers are not aware of how or when Plaintiff updated their rezoning application after receiving Mr. Brower's signatures on March 28, 2022.  Indeed, GWA's corporate representative and QTS's Vice President of Corporate Real Estate, Mark Westhoff, also could not testify to whether or when Plaintiff updated their application.  *See* Exhibit 16, Westhoff Depo. Tr. 118:3-10.

II. **Plaintiff's Claims for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing Fail to State a Claim Upon Which Relief Can Be Granted**

A.   **Legal Standards for Rule 12(b)(6), 12(d), and Rule 56**

Under the Federal Rule of Civil Procedure 12(b)(6), the court determines whether the factual allegations of the complaint are sufficient to state a claim for relief that is "plausible on its face." *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "No assumption of truth attaches to [] 'naked assertions' and 'unadorned conclusory allegations' devoid of 'factual enhancement.'" *Morefield v. Bailey*, 959 F. Supp. 2d 887, 896 (E.D. Va. 2013) (quoting *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013)). To survive a motion to dismiss, "the complaint must present sufficient non-conclusory factual allegations to support reasonable inferences of the plaintiff's entitlement to relief and the defendant's liability for the [alleged] unlawful act or omission." *Id.* (citing *Francis v. Giacomelli*, 588 F.3d 186, 196-97 (4th Cir. 2009)).

Rule 12(d) permits a court to convert a motion to dismiss under Rule 12(b)(6) to a motion for summary judgment under Rule 56 where the motion relies on materials outside the pleadings. Fed. R. Civ. P. 12(d); *see Studco Building System U.S., LLC v. 1st Advantage Federal Credit Union*, 509 F. Supp. 3d 560, 566 (E.D. Va. 2020). Summary judgment under Rule 56 is warranted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When reviewing a summary judgment motion, the court "must view the evidence in the light most favorable to the [non-moving party]". *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). However, summary judgment may be entered when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The "mere existence of a

scintilla of evidence in support of the [non-movant's] position will be insufficient" to find an issue

of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**B.    Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted Because Plaintiff Has Not Alleged Actual Damages nor Can It Show Damages for Any of Its Remaining Claims**

*i.    Plaintiff Cannot Show Actual Damages and is Not Entitled to Nominal Damages for its Breach of Contract Claims*

Under Virginia law, "[t]he elements of a breach of contract action are (1) a legally

enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that

obligation; and (3) *injury or damage* to the plaintiff caused by the breach of obligation." *Filak v.

George*, 594 S.E.2d 610, 619 (Va. 2004) (emphasis added) (finding the alleged breach of contract

did not damage plaintiff).  *See, e.g.*, *Bailey v. Potter*, No. 1:05-cv-936 (JCC), 2006 WL 1582410,

*3 (E.D. Va. June 5, 2006) (noting that state law is an appropriate source for contract law principles

and the defendant need only demonstrate the absence of evidence on *any* of the breach of contract

elements).  Bare allegations of damages arising from a breach of contract will not be sufficient to

survive a Rule 12(b)(6) motion to dismiss a breach of contract claim.  *See id.*; *see also Kassner v.

Kadlec Reg'l Med. Ctr.*, No. CV-11-5114-RMP, 2012 WL 523675, *8 (E.D. Wash. Feb. 15, 2012)

(finding a "bare allegation of damages" for what amounts to speculation does not support a breach

of contract claim).  Proving alleged damages with reasonable certainty is fundamental because

damages are an "essential element" of a successful breach of contract action; thus, the plaintiff's

failure to prove that element warrants dismissal of the claim.  *Hamlet v. Hayes*, 641 S.E.2d 115,

117 (Va. 2007); *see Nguti v. Safeco Ins. Co.*, No. PX-15-742, 2017 WL 2778821, at *3 (D. Md.

June 27, 2017) (noting "speculation or conjecture is insufficient" and finding necessary "some

foundation enabling the fact finder to make a fair and reasonable estimate of the amount of the

damage" (quotations and citations omitted)).

The principle that a court may grant summary judgment where there is no disputed issue of material fact, *see Celotex*, 477 U.S. at 322, "*applies to damages*" in breach of contract actions. *Alig v. Quicken Loans, Inc.*, No. 5:12-CV-114, 2017 WL 5054287, \*22 (N.D. W. Va. July 11, 2017) (emphasis added) (collecting cases).  Where there is no evidence to support a determination that there was "injury or damage to the plaintiff caused by the breach of obligation," *Filak*, 594 S.E.2d at 614, summary judgment as to actual damages is appropriate," *Klicos Painting Co. v. Saffo Contractors, Inc.*, No. JFM-15-02505, 2017 WL 3976625, at \*6 (D. Md. Sept. 6, 2017); *see also HCP Laguna Creek CA, LP v. Sunrise Senior Living Mgmt., Inc.*, 737 F. Supp. 2d 533, 552 (E.D. Va. 2010) (granting summary judgment on breach of contract counterclaim where claimant had "not shown that the [plaintiff's] alleged [failure to perform] caused actual damage"); *Nguti*, 2017 WL 2778821 at \*3.

Plaintiff GWA's case is not a case where nominal damages are appropriate or even sought. Under Virginia law, "[n]ominal damages are those recoverable where a legal right is to be vindicated against an invasion that has produced no actual present loss of any kind or where . . . some injury has been done the amount of which the proof fails to show."  *News Leader Co. v. Kocen*, 3 S.E.2d 385, 390 (Va. 1939) (internal quotation omitted).  Therefore, under Virginia law, nominal damages, only in particular circumstances where there is some injury, are sufficient to make out a prima facie case of breach of contract and to allow a breach of contract plaintiff to proceed to trial. *See, e.g.*, *Minn. Laws. Mut. Ins. Co. v. Batzli*, 442 Fed. App'x 40, 51-53 (4th Cir. 2011) (holding that proof of some kind of damage, but not proof of actual damage, was sufficient for jury to find for breach of contract claimant).  However, "where there [i]s no evidence that any damage (other than the abstract damage caused by violation of legal rights created by a contract) resulted from the breach of contract," as found in *Orebaugh v. Antonious*, 58 S.E.2d 873 (Va. 1950)

and *Bailey*, 2006 WL 1582410 at *3, nominal damages cannot support a breach of contract claim. *Id.* at 52.

In *Orebaugh*, the Supreme Court of Virginia found that the trial court's judgment in favor of the plaintiff was in error because the plaintiff did not "introduce any evidence from which it could be determined that she suffered any loss or damage" other than nominal damages inferred from the alleged violation of her legal rights under the contract. 58 S.E.2d at 874-75. Similarly, in *Bailey*, the Eastern District of Virginia district court concluded that "there [wa]s no meaningful difference" in the alleged facts relating to damages because if plaintiff had her way, she "would receive no benefit whatsoever." 2006 WL 1582410 at *3. As such, the district court rejected plaintiff's assertion that nominal damages could be inferred from the inconsequential violation of her legal rights to satisfy the third element of a breach of contract claim because such inference would "essentially" "eviscerate the 'consequential injury or damage'" element of the claim. *Id.* at *4. In other words, inconsequential violation of one's legal rights, without more, is insufficient to satisfy the damages element of a breach of contract claim. *See id.* ("[T]he better course seems to be to require some evidence of an actual injury.").

Here, Sellers have stipulated to the basic facts that (1) Mr. Brower, on behalf of Pageland LLC and Barbara Brower, entered the purchase agreements with Plaintiff (Joint Pre-Trial Statement ¶¶ 16-17); (2) that those purchase agreements ostensibly provided at Section 7.1 that Mr. Brower cooperate with Plaintiff in pursuing and obtaining the approval of the Comprehensive Plan Amendment (*Id.* ¶ 24); and (3) before Plaintiff commenced this lawsuit, Mr. Brower did not sign the requested rezoning forms for Pageland LLC or Barbara Brower (*Id.* ¶ 31). Nevertheless, not only do the facts show that Plaintiff requested more time to do the very thing it demanded Mr. Brower do by February 28, 2022, more importantly, Plaintiff has not sufficiently alleged nor has it

suffered any loss or injury as a result of receiving Mr. Brower's belated signature.  SOF ¶¶ 17-19, 27, 35, 37, 39; Brower Decl. ¶¶ 12-14; Exhibit 14, Westhoff Depo. Tr. 110:12 – 121:12; Exhibit 3, January 27, 2022 Email from Kate Hauber; Exhibit 4, March 7, 2022 Email from Kate Hauber.

Unlike the *Batzli* case, the facts here do not support a determination that there was injury or damage to the Plaintiff because, by its own admission, Plaintiff's rezoning application has not been rejected, nor was there ever any threat of it being rejected because Mr. Brower signed the forms late.  SOF ¶¶ 35, 37, 39; Exhibit 14, Westhoff Depo. Tr. 110:12 – 121:12. Furthermore, the evidence demonstrates that despite the Section 7.2.1 language of the purchase agreements invoked by Plaintiff to demand that Mr. Brower sign by February 28, 2022, Plaintiff had in fact retained its outside counsel to draft a Master Amendment that would allow them until April 15, 2022 to file its rezoning application.  SOF ¶¶ 17-19, 26; Exhibit 3, January 27, 2022 Email from Kate Hauber; Exhibit 4, March 7, 2022 Email from Kate Hauber.  Plaintiff cannot now claim damages for some alleged breach of the purchase agreements when it first took steps to alter the original agreement that Sellers entered.[6]  Moreover, Mr. Brower held a reasonable belief based on the advice of an attorney that the terms of the original purchase agreements did not require him to sign the Master Amendment seeking an extension or requiring his signature to the Rezoning Forms by April 15,

---

[6] Plaintiff has listed on its September 23, 2022 Exhibit List as its last exhibit that "[a]t the appropriate time, GWA may introduce documents regarding its attorneys' fees and costs incurred in prosecuting this action and defending the dismissed counterclaims" (Dkt. No. 108).  However, as Plaintiff knows because of the way it listed this exhibit—without producing anything even related in its Rule 26 disclosures or discovery—assessment of damages is part of the merits of the claim that must be determined, and a contract term that simply provides that "the prevailing party shall be entitled to recover reasonable attorneys' fees" is not a claim for damages.  *See, e.g.*, Fed. R. Civ. P. 54(d)(2)(A), Advisory Committee Note (stating that Rule 54(d)(2) "does not. . . apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury."); *see Carolina Power & Light Co. v. Dynegy Mktg. & Trade*, 415 F.3d 354, 358-59 (4th Cir. 2005).

2022, let alone by February 28, 2022.  SOF ¶¶ 24-25; Brower Decl. ¶ 11-13; Exhibit 10, February 23, 2022 Email from Edward Zughaib.[7]

Rather, this case is analogous to *Orebaugh* or *Bailey* because similar to the facts in *Orebaugh*, Plaintiff moved forward with its submission of the rezoning application on February 28, 2022.  Like there was no evidence in *Orebaugh* that the property owner took less for the property when it sold despite still having the inoperable heating system that was allegedly a breach of contract by the contractor who installed it, Plaintiff has no evidence that Mr. Brower's belated signature for its rezoning application has caused any loss or damage to Plaintiff.  Plaintiff not only agreed it could file after February 28, 2022, it asked Mr. Brower for his approval to do so.  More importantly, however, Plaintiff's application was never rejected for lack of Mr. Brower's signature at submission, and in fact, the Planning Commission approved the application with no delay attributable to Sellers or even to Plaintiff.  SOF ¶¶ 35, 37, 39; Exhibit 13, September 14, 2022 Planning Commission Resolution.  Thus, the evidence weighs in favor of summary judgment for Sellers on Plaintiff's claims.[8]

---

[7] Even though Mr. Zughaib attempts to disclaim an attorney-client relationship with Mr. Brower by saying that he has "not been retained" by Mr. Brower and is "not able to give [Mr. Brower] legal advice" until they have entered a "formal attorney/client relationship," it is well established that formality is not an essential element of the employment of an attorney.  Exhibit 10, February 23, 2022 Email from Edward Zughaib.  *See Nicholson v. Shockey*, 64 S.E.2d 813, 817 (Va. Ct. App. 1951).  Indeed, "[u]nder Virginia law, an attorney-client relationship may be express or implied" "from the actions of the parties."  *Centripetal Networks, Inc. v. Palo Alto Networks, Inc.*, No. 2:21-cv-137 (RCY), 2022 WL 610176, at *7 (E.D. Va. Mar. 1, 2022).  All that is required to support a client's reasonable belief that an attorney-client relationship has formed is "an indication that the advice and assistance of the attorney was sought and received."  *Id.* (quoting *Nicholson*, 64 S.E.2d at 817).  Here, Mr. Brower sought and received Mr. Zughaib's advice and assistance regarding the purchase agreements and amendments.  Mr. Brower reasonably believed that Mr. Zughaib's advice could be relied upon because Mr. Brower sought Mr. Zughaib's advice in his professional capacity as an experienced real estate attorney.

[8] Relatedly, even if GWA could prove actual damages, Sellers have raised, and intend to argue at trial if necessary, the defense of their reliance on advice of counsel.  To assert the advice of counsel defense in a civil case, a party need only show "(a) full disclosure of all pertinent facts

ii.   *GWA Has Not Alleged a Separate Cause of Action for Breach of the Covenant of Good Faith and Fair Dealing Nor Has It Suffered Any Actual or Nominal Damages*

A claim for breach of the covenant of good faith and fair dealing is not distinct from a claim for breach of contract.  *See Eplus Tech., Inc. v. Nat'l R.R. Passenger Corp.*, 407 F. Supp. 2d 758, 762 (E.D. Va. 2005) ("While Virginia law recognizes a contractual duty of good faith and fair dealing, a breach of that duty only creates a claim for breach of contract.").  Thus, "[w]here there is a claim for breach of contract, the inclusion of a claim for breach of the implied covenant of good faith and fair dealing as a separate claim is duplicative of the breach of contract claim; it does not provide an independent cause of action." *Rogers v. Deane*, 992 F. Supp. 2d 621, 633 (E.D. Va. 2014); *see also Joyce v. Lincoln Nat'l Life Ins. Co.*, 845 F. Supp. 353, 355 (E.D. Va. 1993) (noting that, under Virginia law, breach of implied covenant of good faith and fair dealing is not an independent cause of action).  Where a breach of contract claim is dismissed via summary judgment, summary judgment may be granted for an attendant breach of good faith and fair dealing

---

to an attorney, and (b) good faith reliance on the attorney's advice."  *In re Global Computer Enterprises, Inc.*, No. 14-13290-BFK, 2017 WL 3580171, at *19 (Bankr. E.D. Va. Aug. 15, 2017) (quoting *United States v. Westbrooks*, 780 F.3d 593, 596 (4th Cir. 2015)).  Further, a party that relies in good faith on the erroneous advice of counsel in breaching a contract does not act with bad faith in breaching the contract, and therefore may not be liable for breaching the covenant of good faith and fair dealing.  *See Chemeon Surface Tech. v. Metalast Int'l, Inc.*, No. 3:15-cv-00294-CLB, 2021 WL 694815, at *15-16 (D. Nev. Feb. 23, 2021).

Here, Mr. Brower relied on the advice of an experienced real estate attorney that there was "no language in the [Pageland Purchase Agreement] that require[d] [him] to sign an amendment or [that] put [him] in default if [he did not sign.]"  Exhibit 10, February 23, 2022 Email from Edward Zughaib.  As evidenced in Mr. Brower's question to this attorney, he understood this advice to mean that the terms of the Pageland Purchase Agreement did not require him to sign any of the amendments or forms that Plaintiff presented to him via Third-Party Defendant Mary Ann Ghadban who was Sellers' broker for the deal.  *See id.*; Brower Decl. ¶¶ 11-13.  Mr. Brower acted in good faith on this advice.  In addition, Mr. Brower relied on his counsel, Timothy Purnell, that the Pageland and Brower Purchase Agreements were in order after Mr. Brower provided all relevant deeds and title paperwork to Mr. Purnell and asked him to review it along with the draft Pageland and Brower Purchase Agreements.  SOF ¶ 13; Brower Decl. ¶ 8.

cause of action. *See Rogers*, 992 F. Supp. 2d at 632-33 (granting defendants' motion for summary judgement regarding plaintiff's claim for breach of covenant of good faith and fair dealing after court granted summary judgment motion with respect to breach of contract claim).

Moreover, the implied covenant of good faith and fair dealing is "not recognized 'in contracts outside of those governed by the Uniform Commercial Code ("U.C.C."), and the U.C.C. 'expressly excludes the transfer of realty from its provisions.'" *Hazaimeh v. U.S. Bank Nat. Ass'n*, 94 F. Supp. 3d 741, 751 (E.D. Va. 2015) (quoting *Harrison v. U.S. Bank Nat'l Ass'n*, No. 3:12-cv-00224, 2012 WL 2366163, at * (E.D. Va. June 20, 2012) (quoting *Greenwood Assocs., Inc. v. Crestar Bank*, 248 Va. 265, 448 S.E.2d 399, 402 (1994))); *see also* Va. Code § 8.9A–109(d)(11) ("This title does not apply to the creation or transfer of an interest in or lien on real property, including a lease or rents thereunder...."). Thus, as the Eastern District Court of Virginia has decided in several cases[9] agreeing with the *Harrison* Court's interpretation of *Greenwood Assocs.*

---

[9] *See Jones v. Fulton Bank, N.A.*, 565 F. App'x 251, 253 (4th Cir. 2014) ("[T]he UCC does not apply to transfers of real property"); *Bagley v. Wells Fargo Bank, NA.*, No. 3:12-cv-617, 2013 WL 350527, at *6 (E.D. Va. Jan. 29, 2013); *Burke v. Nationstar Mortg., LLC*, No. 3:14-cv-837, 2015 WL 4571313, at *7 (E.D. Va. July 28, 2015) ("Assuming without deciding that Plaintiff has alleged a breach of contract claim stemming from a failure to act in good faith and fair dealing, it is of no matter because Virginia law 'does not recognize an implied covenant of good faith and fair dealing in contracts outside of those governed by the Uniform Commercial Code (U.C.C.), and the U.C.C. expressly excludes the transfer of realty from its provisions.'" (quoting *Bagley*, 2013 WL 350527, at *6)). *But see Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450-51 (E.D. Va. 2009) (noting that "[i]n Virginia, every contract contains an implied covenant of good faith and fair dealing," and declining to dismiss breach of the covenant of good faith and fair dealing claim simply because "Plaintiff has alleged bad faith and unfair dealing in a contractual relationship, and the claims "are not merely claims for Defendant's unfavorable exercise of its contractual rights."). The *Enomoto* case is sufficiently different from Plaintiff's allegations here because there is no allegation that Ms. Brower's actions were dishonest because, as is clear in Plaintiff's allegations and the facts presented above, the Brower and Pageland LLC title issue was simply a mistake. Moreover, Plaintiff has failed to show any damage it suffered because of Mr. Brower and Mr. Purnell's mistake. Exhibit 14, Westhoff Depo. Tr. 110:12 – 121:12. Thus, it is enough to dismiss the claim because it cannot stand on its own, *Hazaimeh*, 94 F. Supp. 3d at 751, but Plaintiff's claim also fails and summary judgment should be entered in favor of Ms. Brower

and Va. Code § 8.9A-109, Plaintiff's claim that Barbara Brower breached the covenant of good faith and fair dealing is barred by statute and should be dismissed.

Here, Plaintiff's claim for breach of the covenant of good faith and fair dealing against Barbara Brower is not only duplicative of the breach of contract claim against her, it is defective because it fails to state a claim for relief and should be dismissed under Rule 12(b)(6). Nowhere in its Amended Complaint does the Plaintiff allege that Ms. Brower's purported breach of the covenant constitutes a breach of the Pageland Purchase Agreement, and Plaintiff has itself mooted any such alleged claim by failing to allege breach of contract due to the mistake regarding the title to the Brower Property (Am. Compl. ¶¶ 82-83) and by terminating the Barbara Brower Purchase Agreement before commencing this lawsuit. *See* Joint Pre-Trial Statement ¶¶ 20-22, Dkt. 110. Furthermore, even if the Court were to read into Plaintiff's Amended Complaint a claim for breach of a valid contract and the attendant breach of the covenant, the covenant does not attach to this type of real estate agreement at issue and Plaintiff has failed to allege actual damages and has not produced any evidence of damages related to the purported breach. *See* SOF ¶¶ 35, 37, 39; Exhibit 14, Westhoff Depo. Tr. 110:12 – 121:12; *see also Hazaimeh*, 94 F. Supp. 3d at 751. Thus, dismissal of Plaintiff's seventh claim for relief under Rule 12(b)(6) or, in the alternative, judgment as a matter of law under Rule 56 should be granted in favor of Ms. Brower.

## <u>CONCLUSION</u>

For the foregoing reasons, all of Plaintiff's claims should be dismissed or, in the alternative, summary judgment should be entered in Sellers' favor. Claims I, II, III, and IV of the Amended

---

because Plaintiff has failed to prove damages, which is an essential element of a breach of contract claim.

Complaint—Plaintiff's claims for declaratory judgment and specific performance—should be dismissed under Fed. R. Civ. P. 12(b)(1) as moot.  Claims V, VI, and VII—Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing—should be dismissed under Fed. R. Civ. P. 12(b)(6), or based on the undisputed material facts and record herein, summary judgment should be entered in Sellers' favor under Fed. R. Civ. P. 56.

Dated: October 3, 2022                     Respectfully submitted,

                                           /s/ Anthony T. Pierce
                                           Anthony T. Pierce, VSB No. 27862
                                           Miranda A. Dore, VSB No. 92891
                                           Abigail K. Kohlman, VSB No. 86590
                                           AKIN GUMP STRAUSS HAUER & FELD LLP
                                           Robert S. Strauss Tower
                                           2001 K Street, NW
                                           Washington, D.C. 20006
                                           Tel: (202) 887-4000
                                           Fax: (202) 887-4288
                                           Email: apierce@akingump.com
                                                  mdore@akingump.com
                                                  akohlman@akingump.com

                                           *Counsel for Defendants/Third-Party Claim Plaintiffs Pageland LLC, Barbara Brower, and Jon Sanders Brower*

<u>CERTIFICATE OF SERVICE</u>

I certify that on October 3, 2022, a copy of the foregoing was electronically served via the Court's ECF system to all parties registered to receive such service.

                                           /s/ Anthony T. Pierce
                                           Anthony T. Pierce
                                           AKIN GUMP STRAUSS HAUER & FELD LLP
                                           Robert S. Strauss Tower
                                           2001 K Street, NW
                                           Washington, D.C. 20006

Tel: (202) 887-4411
Fax: (202) 887-4288
Email: apierce@akingump.com