IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

GW ACQUISITION CO., LLC,                          )
                                                  )
      Plaintiff,                               )
                                                  )
    v.                                          )
                                                  )
PAGELAND LIMITED LIABILITY CO., et al.,           )
                                                  )        1:22-cv-255 (LMB/JFA)
      Defendants/Third-Party Claim             )
      Plaintiffs,                              )
                                                  )
    v.                                          )
                                                  )
MAGLANDBROKER, LLC, et al.,                       )
                                                  )
      Third-Party Defendants.                  )

## MEMORANDUM OPINION

Before the Court is Plaintiff GW Acquisition Co., LLC's Motion for Attorneys' Fees and Costs ("Motion"), in which plaintiff GW Acquisition Co., LLC ("plaintiff," "GWA," or "Buyer") seeks to recover $1,010,231.50 in attorneys' fees[1] and $9,378.22 in costs as the prevailing party in this civil action against defendant Pageland Limited Liability Company ("Pageland LLC").[2] [Dkt. Nos. 180, 191]. The motion has been fully briefed and argument has been held. For the reasons that follow, the Motion is granted in part, and plaintiff will be awarded $727,366.68 in attorneys' fees and $9,378.22 in costs.

---

[1] Plaintiff originally sought $1,019,491.00 in attorneys' fees but voluntarily reduced the requested amount to $1,010,231.50. See [Dkt. No. 191] at 2.

[2] Although Pageland LLC is the only defendant against which GWA has prevailed because its claims against defendants Barbara Brower and Jon Sanders Brower were dismissed, this Memorandum Opinion refers collectively to defendants as "the Sellers" to be consistent with its earlier opinion.

# I. BACKGROUND

## A. **Procedural Background**

The complex factual background and history of this litigation is fully developed in the Memorandum Opinion entered on January 6, 2023, see GW Acquisition Co., LLC v. Pageland Ltd. Liab. Co., No. 1:22-cv-255 (LMB/JFA), 2023 WL 125018 (E.D. Va. Jan. 6, 2023), therefore only the factual and procedural background that is relevant to resolving the fee petition is described in this Memorandum Opinion.

This civil action arises out of a dispute over an agreement in which defendants Pageland LLC, Barbara Brower, and Jon Sanders Brower ("Brower") (collectively, "defendants" or "Sellers") contracted to sell three parcels of land to the Buyer, GWA, as part of the Prince William County Digital Gateway Project. After the Buyer and the Sellers executed two Purchase and Sale Agreements, one with Barbara Brower and one with Pageland LLC, the Sellers refused to sign required rezoning forms despite the Buyer's multiple requests and the Sellers' contractual obligation to cooperate with pursuing and obtaining county approval of the project. In response, on March 8, 2022, the Buyer filed an eight-count Complaint against the Sellers seeking: declaratory relief providing that Pageland LLC is required to execute the rezoning form (Count I); declaratory relief against Barbara Brower for the same (Count II); specific performance against Pageland LLC to execute the rezoning form (Count III); specific performance against Barbara Brower for the same (Count IV); breach of contract against Pageland LLC for refusing to execute the rezoning form (Count V); breach of contract against Barbara Brower for the same (Count VI); tortious interference with contract against Brower (Count VII); and breach of the duty of good faith and fair dealing against Barbara Brower for failing to resolve a title defect (Count VIII). [Dkt. Nos. 3, 74]. Plaintiff also filed a Motion for Temporary Restraining Order

("TRO Motion") requesting that the Court order the Sellers to comply with the Purchase and Sale Agreements and complete the rezoning forms.  [Dkt. Nos. 4, 70].

On March 18, 2022, the Court held a hearing on the TRO Motion, at which the Sellers did not appear, and subsequently granted the TRO Motion on March 23, 2022, ordering the Sellers to comply with the Purchase and Sale Agreements "including signing all required zoning forms within two (2) business days" of service of the TRO.  [Dkt. Nos. 22, 24].  On March 23, 2022, plaintiff's process server attempted to serve Brower and contacted him by phone to arrange a time for service.  [Dkt. No. 181-5].  Brower informed the process server that he would be out of town until March 28, 2022, id.; however, the process server attempted service again and Brower was successfully served with the TRO on March 24, 2022, [Dkt. No. 181-6].  On March 28, 2022, Brower executed the rezoning forms, as well as an Amendment and Termination Agreement, which amended the Purchase and Sale Agreement executed with Pageland LLC to cure a title defect and terminated the Purchase and Sale Agreement executed with Barbara Brower.  [Dkt. No. 110] ¶ 39.

According to records filed by the Buyer, the parties subsequently engaged in discussions to settle this civil action, with the Buyer seeking the Sellers' agreement to a permanent injunction to ensure their continued cooperation with execution of the Purchase and Sale Agreements and the rezoning process, see [Dkt. Nos. 181-1, 181-8]; however, settlement efforts stalled, and the Sellers retained new counsel, see [Dkt. No. 181-9].

On May 6, 2022, the Sellers filed their Answer to the Complaint, as well as a five-count Counterclaim against the Buyer alleging fraud, conspiracy to commit fraud and breach fiduciary duties, tortious interference with contract, and unjust enrichment, and requesting a declaratory judgment that the Purchase and Sale Agreements were void.  [Dkt. Nos. 36, 111].  The Sellers

3

also filed a Third-Party Complaint against third-party defendants MagLandBroker, LLC and Mary Ann Ghadban ("Ghadban") (collectively, "third-party defendants" or "Broker"). On May 27, 2022, the Buyer filed a Motion to Dismiss or, Alternatively, for Summary Judgment as to the Sellers' counterclaims. [Dkt. No. 51]. The Counterclaim and Third-Party Complaint significantly increased the scope of discovery and overall litigation expenses for the Buyer.

On June 3, 2022, the Sellers propounded document requests and interrogatories on the Buyer relating to their counterclaims. See [Dkt. Nos. 181-10, 181-11]. The Buyer's motion to dismiss the counterclaims was initially set for a hearing on June 21, 2022; however, on June 6, 2022, the Sellers requested an extension of the deadline to file a response to the motion to dismiss and also sought to reschedule the hearing to July 6, 2022 to enable the Broker's motion to dismiss the third-party claims to be heard at the same time, [Dkt. No. 58]. Although the Buyer did not consent to the request, the Court granted the extension, [Dkt. No. 59], and the hearing was rescheduled to July 12, 2022. During that time, plaintiff's counsel prepared its responses to the Sellers' discovery requests to meet the discovery response deadline and collected "hundreds of thousands of documents . . . to review for responsiveness." [Dkt. No. 181] at 26. By the time the hearing on the Buyer's motion to dismiss the counterclaims occurred, plaintiff's counsel had reviewed over 46,000 documents for responsiveness, privilege, and confidentiality for production to the Sellers. Id. Plaintiff's counsel maintains that the "vast majority of GWA's document discovery efforts" were related to the Sellers' counterclaims because, after the counterclaims were dismissed, only 57 documents relating to the Buyer's claims were produced to the Sellers in response to their discovery requests. Id.

On July 12, 2022, the Court dismissed all five of the Sellers' counterclaims against the Buyer pursuant to Fed. R. Civ. P. 12(b)(6), finding that the claims were speculative and

4

conclusory. [Dkt. No. 87]. The parties' subsequent discussions about settling this civil action were unsuccessful. See [Dkt. Nos. 181-2, 181-3, 181-4]. A jury trial was set for November 29, 2022. [Dkt. No. 98].

On September 19, 2022, the Buyer filed a First Amended Complaint and voluntarily dismissed its tortious interference with contract claim (Count VII) against Brower, who then ceased to be a direct defendant in this civil action. [Dkt. No. 100]. The parties subsequently filed cross-motions for summary judgment, [Dkt. Nos. 122, 127, 130, 133], and oral argument was held on November 9, 2022. While the motions for summary judgment were under advisement, the parties prepared for the November 29, 2022 jury trial, which included briefing the Sellers' Motion for Additional Peremptory Challenges, [Dkt. No. 150]. On November 18, 2022, the Court entered an Order advising the parties that it intended to resolve this civil action on the papers and cancelled the jury trial. [Dkt. No. 174].

On January 6, 2023, the Court issued a Memorandum Opinion and Order granting in part and denying in part defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment ("Sellers' First Motion") and granting in part and denying in part plaintiff's Motion for Summary Judgment ("Buyer's Motion"). [Dkt. Nos. 177, 178, 179]. The Court granted the Buyer's Motion and denied the Sellers' First Motion as to Counts I and V for declaratory relief and breach of contract, respectively, against Pageland LLC. As to Count I, the Court entered a declaratory judgment ordering that Pageland LLC "support and cooperate with plaintiff GW Acquisition Co., LLC in pursuing and obtaining approval of the Data Center Rezoning application for the Prince William County Digital Gateway Project." [Dkt. No. 179] at 2. As to Count V, the Court found that Pageland LLC breached the Purchase and Sale Agreement,

rejected defendants' defenses as meritless, and awarded the Buyer $10.00 in nominal damages, along with a right to recover reasonable attorneys' fees and costs.  Id.

As to the remaining claims in the Amended Complaint, the Court denied the Buyer's Motion and granted the Sellers' First Motion.  As a result, all of the Buyer's claims against Barbara Brower—Counts II, IV, VI, and VII of the First Amended Complaint—were dismissed on the grounds that she was not the proper defendant because she lacked mental capacity and her son, Jon Sanders Brower, had undertaken all the conduct at issue in these counts, as well as on grounds of mootness (Counts II and IV), duplicative relief (Count VI), and failure to state a claim for relief (Count VII).  As for the claim for specific performance against Pageland LLC (Count III), the Court dismissed that claim as moot in light of the TRO, because the Buyer had "received all the relief sought in Count III" upon Brower signing the rezoning form in response to the TRO.[3]  GW Acquisition Co., 2023 WL 125018, at *15.  The Memorandum Opinion and Order entered on January 6, 2023 left the issue of attorneys' fees and costs for further briefing.

### B.  The Buyer's Motion for Attorneys' Fees and Costs

On January 20, 2023, the Buyer filed its Motion for Attorneys' Fees and Costs, which requested an award of $1,019,491 in attorneys' fees and $9,378.22 in costs.  [Dkt. No. 180].  The Purchase and Sale Agreement at issue in the Amended Complaint included the following attorneys' fees and costs provision:

> If any legal action or other legal proceeding relating to this Agreement or the enforcement of any provision of this Agreement is brought against any party hereto, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs and disbursements, court costs and the cost of any expert witnesses retained by that party (in addition to any other relief to which the prevailing party may be entitled). Any such reasonable attorneys' fees and other expenses incurred by any party in enforcing a

---

[3] The Buyer appeared to request injunctive relief that was broader than what was sought in the First Amended Complaint, but the Court declined to permit plaintiff to amend its claims through a summary judgment motion.

judgment in its favor shall be recoverable separately from and in addition to any other amounts included in such judgment, and such attorneys' fees obligation is intended to be severable from the other provisions hereof and to survive and not be merged into any such judgment. Notwithstanding the foregoing, in no event shall Purchaser be obligated to pay or reimburse Seller for attorneys' fees or any other costs or expenses of Seller, if Purchaser pursues an action of specific performance against Seller upon a default by Seller under this Agreement, and Purchaser is not the prevailing party.

[Dkt. No. 128-2] § 21.4. As the prevailing party on some of its claims to enforce this agreement, as well as in defending against the Sellers' counterclaims, the Buyer is entitled under this provision to recover its reasonable attorneys' fees and costs.

In support of its fee petition, the Buyer initially filed heavily redacted billing invoices. [Dkt. No. 180]. After the Sellers objected to the fee petition and the redactions, the Court granted the Buyer's offer to file the unredacted copies of its billing invoices under seal and <u>ex parte</u>. [Dkt. No. 186]. Oral argument was held on March 3, 2023, and the Court ordered that the Buyer refile its billing invoices in the public docket with only those redactions that are "absolutely necessary to protect privileged or protected attorney-client communications and attorney work-product[.]" [Dkt. No. 190]. The Court permitted the Sellers to supplement their opposition to the Buyer's fee petition based on the refiled invoices. <u>Id.</u>

On March 10, 2023, the Buyer filed a revised redacted version of its billing invoices and submitted an unredacted version to chambers. [Dkt. No. 191]. The Buyer represents that it "<u>sua sponte</u> removed or adjusted approximately 30 time & task entries related to counsel's efforts to respond to the Court's concerns" about "sealed filings and redactions throughout the [p]arties' prosecution and defense of this matter," resulting in a reduction in the fee request by $9,467.50 to $1,010,231.50. <u>Id.</u> at 2. On March 24, 2023, the Sellers filed their supplemental response. [Dkt. No. 192].

## II. ATTORNEYS' FEES

**A. <u>Standard of Review</u>**

To recover its attorneys' fees and expenses, a plaintiff bears the burden of proving that "the attorneys' fees it seeks are reasonable in relation to the results obtained and were necessary." <u>Zoroastrian Ctr. & Darb-E-Mehr of Metro. Washington, D.C. v. Rustam Guiv Found. of New York</u>, 822 F.3d 739, 754 (4th Cir. 2016) (quoting <u>Chawla v. BurgerBusters, Inc.</u>, 499 S.E.2d 829, 833 (Va. 1998)). Courts in the Fourth Circuit have relied on a three-step framework to determine whether attorneys' fees are reasonable and necessary. <u>See, e.g.</u>, <u>McAfee v. Boczar</u>, 738 F.3d 81, 88 (4th Cir. 2013). Under that framework, "a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." <u>Robinson v. Equifax Info. Servs., LLC</u>, 560 F.3d 235, 243 (4th Cir. 2009). Determining the "lodestar figure" is guided by twelve factors adopted by the Fourth Circuit in <u>Barber v. Kimbrell's Inc.</u>, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (citing <u>Johnson v. Georgia Hwy. Express Inc.</u>, 488 F.2d 714 (5th Cir. 1974)):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

<u>Robinson</u>, 560 F.3d at 243 (quoting <u>Kimbrell's Inc.</u>, 577 F.2d at 226 n.28). A court "need not address all twelve factors independently[.]" <u>Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship</u>, 730 F. Supp. 2d 513, 520 (E.D. Va. 2010).

After determining the lodestar, a court "should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." <u>Id.</u> (quoting <u>Grissom v. Mills Corp.</u>, 549 F.3d

313, 321 (4th Cir. 2008)).  Finally, a court should "award[] some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." Id. (quoting Grissom, 549 F.3d at 321).  The "'degree of success obtained' by the plaintiff" is "[t]he 'most critical factor' in determining the reasonableness of a fee award," and "[w]hen a plaintiff has achieved 'only partial or limited success,' the district court 'may simply reduce the award to account for the limited success'" of the plaintiff.  Lilienthal v. City of Suffolk, 322 F. Supp. 2d 667, 671 (E.D. Va. 2004) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)).

**B. Discussion**

The Buyer seeks an award of $1,010,231.50 in attorneys' fees.  The Sellers argue that the Buyer should not be awarded any attorneys' fees or, in the alternative, the requested fee amount should be reduced by 93% to $70,716.20.  Although the Sellers point out several problems with the Buyer's fee request which justify reducing the requested amount, the Sellers' argument that the Buyer's fee recovery should be limited to pursuing Count V for breach of contract is meritless.

The Sellers contend that at summary judgment, the Court "decided that GWA is only entitled to fees on Count V," its breach of contract claim, and not Count I, its claim for declaratory relief, and that "[t]his ruling excludes any recovery of fees related to GWA's temporary restraining order and litigation regarding the Browers' counterclaims." [Dkt. No. 183] at 2.  The Court made no such ruling.  The Court's January 6, 2023 Order "awarded [GWA] nominal damages in the amount of $10.00 and its reasonable attorney's fees and costs with regard only to Count V of the First Amended Complaint." [Dkt. No. 179] at 2.  That portion of the Order is limited to Count V, and it was not the Court's intention to preclude the Buyer from recovering attorneys' fees and costs as to Count I, the TRO, or the Sellers' counterclaims.

Because "parties are free to draft and adopt contractual provisions shifting the responsibility for attorneys' fees to the losing party in a contract dispute" in Virginia, the plain language of the attorneys' fee provision in the Purchase and Sale Agreement controls. Ulloa v. QSP, Inc., 624 S.E.2d 43, 81 (Va. 2006); see W. Square, L.L.C. v. Commc'n Techs., Inc., 649 S.E.2d 698, 702 (Va. 2007).  Pursuant to that contract, the Sellers agreed to pay the "reasonable attorneys' fees, costs and disbursements" of the "prevailing party" in "any legal action or other legal proceeding relating to this Agreement or the enforcement of any provision of this Agreement[.]" [Dkt. No. 128-2] § 21.4.  In Virginia, the "prevailing party" is the "party in whose favor a judgment is rendered, regardless of the amount of damages," and in making this determination, "the general result should be considered, and inquiry made as to who has, in the view of the law, succeeded in the action." Sheets v. Castle, 559 S.E.2d 616, 620 (Va. 2002) (quoting Richmond v. County of Henrico, 41 S.E. 2d 35, 41 (Va. 1947)).

Contrary to the Sellers' assertion, it is not the case that the Buyer's "status as a 'prevailing party' is limited to a single claim—Count V." [Dkt. No. 192] at 4.  First, the Buyer is entitled to recover its fees for successfully obtaining the TRO.  As the procedural history of this litigation demonstrates, the TRO was directly related to the Buyer's breach of contract claim, and the Buyer prevailed by obtaining that TRO which resulted in the Sellers' performing their obligation under the Purchase and Sale Agreements to execute the rezoning forms.  The Buyer also prevailed at summary judgment on Count I and obtained a declaratory judgment affirming Pageland LLC's continuing obligations to perform under the Purchase and Sale Agreement. Both the TRO and Count I are "relat[ed] to" enforcing the contract between the parties and therefore the Buyer's reasonable attorneys' fees expended in litigating those claims are recoverable. See Ulloa, 624 S.E.2d at 81; Signature Flight Support Corp., 730 F. Supp. 2d at 519

10

(observing that under Virginia law, a party may be considered a "prevailing party" even if the party does not prevail on the merits of all of its claims or only receives some of the relief or damages initially demanded).

As for the counterclaims, the Sellers argue that the Buyer "cites no authority" to support that it should be awarded attorneys' fees for successfully defending against their "compulsory counterclaims" and maintain that they "were entitled to pursue a litigation strategy to defend themselves, including lodging compulsory counterclaims they would have otherwise abandoned if they did not raise them in response to GWA's premature lawsuit." [Dkt. No. 183] at 2 n.1. The Sellers' assertion that the Buyer's attorneys' fees expended on defending against the counterclaims are unrecoverable is unsupported by the broad attorneys' fee provision in the Purchase and Sale Agreement. See Coady v. Strategic Res., Inc., 515 S.E.2d 273, 276 (Va. 1999) (interpreting a request for attorneys' fees according to the "broad and all-encompassing" terms of the fee provision). The Purchase and Sale Agreement to which the Sellers are bound provides for a recovery of attorneys' fees by the "prevailing party" in "any legal action . . . relating to this Agreement or the enforcement of any provision of this Agreement . . . brought against any party hereto." [Dkt. No. 128-2] § 21.4 (emphasis added). The adjective "any" supports the conclusion that the reasonable attorneys' fees and expenses expended in successfully defending against claims related to the Purchase and Sale Agreement or its enforcement are recoverable. Here, the Sellers' counterclaims were undisputedly "relat[ed] to [the] Agreement" or its enforcement, because the counterclaims attacked the validity of the Purchase and Sale Agreement as the product of fraud (Counterclaim II) (for which the Sellers alleged they "suffered damages in excess of $100,000,000"), [Dkt. No. 36] ¶¶ 54-60, civil conspiracy to commit fraud and breach fiduciary duties (Counterclaim IV), id. ¶¶ 72-74, and

11

unjust enrichment (Counterclaim VII), id. ¶¶ 90-92, and sought damages "no less than $4,600,000" as well as a declaration that the Purchase and Sale Agreements were voidable (Counterclaim VIII), id. ¶¶ 95-101.  Counterclaim VI also alleged that the Buyer tortiously interfered with the Sellers' listing agreement with the Broker and induced the Broker to breach that agreement by offering a higher price for her land in exchange for selling the Sellers' land at a "significant discount," id. ¶¶ 81-88, which was also related to and dependent on the terms of the Purchase and Sale Agreement. Cf. Ulloa, 624 S.E. 2d at 49 (observing that "any action relating" to the contract "excludes an independent action" where a successful claim is "not dependent upon provisions contained in a contract between the parties"). The Buyer was the prevailing party on the Sellers' counterclaims because it successfully obtained dismissal of all the claims pursuant to Fed. R. Civ. P. 12(b)(6). As the Virginia Supreme Court has cautioned, even in the context of fee-shifting provisions, "[c]ourts will not rewrite contracts; parties to a contract will be held to the terms upon which they agreed." Dewberry & Davis, Inc. v. C3NS, Inc., 732 S.E.2d 239, 244 (Va. 2012) (holding that the circuit court abused its discretion when it limited the plaintiff's recovery of attorneys' fees to $1 for the defense of counterclaims after finding that the counterclaims arose from a "legitimate dispute" covered by the clear terms of the fee-shifting provision that mandated recovery of "reasonable attorneys' fees and expenses for the prosecution or defense of any cause of action, claim or demand arising under this agreement in any court").

In sum, the Buyer can recover its reasonable attorneys' fees for initiating this civil action and obtaining a TRO, successfully litigating, in part, the Amended Complaint and obtaining a declaratory judgment (Count I) and prevailing on its breach of contract claim (Count V), and

successfully defending against the Sellers' counterclaims, subject to the adjustments to the lodestar discussed below.

      1.  <u>Reasonable Rates</u>

      To determine the lodestar figure, the Court must first evaluate the reasonableness of the rates charged by the Buyer's attorneys. The Buyer bases its fee application on the work of four attorneys at Stinson LLP who billed at the rates summarized in Figure 1, all of which fall within, if not below, the hourly rates routinely used in this Court under the <u>Vienna Metro</u> matrix. <u>See</u> <u>Cho v. Joong Ang Daily News Wash., Inc.</u>, No. 1:18-cv-1062 (LMB/IDD), 2020 WL 1056294, at *4-5 (E.D. Va. Mar. 4, 2020); <u>Vienna Metro LLC v. Pulte Home Corp.</u>, No. 1:10-cv-502, 2011 WL 13369780, at *6 (E.D. Va. Aug. 24, 2011).

<u>Figure 1: Hourly Rates of Plaintiff's Attorneys</u>

| <u>Attorney</u> | <u>Position</u> | <u>Experience</u> | <u>Hourly Rate</u> | <u>Vienna Metro Matrix Hourly Rates</u> |
|---|---|---|---|---|
| Michael Tucci ("Tucci") | Partner | 37 years | $710 | $505-820 (20+ years of experience) |
| Bradley Yeretsky ("Yeretsky") | Partner | 20 years | $490 | $505-820 (20+ years of experience) |
| Brandon Nagy ("Nagy") | Senior Associate[4] | 9-10 years | $415 | $465-640 (8-10 years of experience) |
| Anna J. Turner ("Turner") | Associate | 1-2 years | $300 | $250-435 (1-3 years of experience) |

<u>See</u> [Dkt. No. 181-7] ¶¶ 9-12. In support of the reasonableness of these rates, Tucci averred in his declaration that the billable rates are "comparable" to those charged throughout the D.C. metropolitan area and added that some of the attorneys' rates are based on rates charged in the Kansas City area (<u>e.g.</u>, Yeretsky's rate), which are lower than rates charged in this area. <u>Id.</u> ¶ 18. Tucci also pointed out that Stinson LLP is an AmLaw 200 firm and its rates are comparable to

---

[4] Nagy was a Senior Associate for most of the duration of this litigation but is now Of Counsel.

the mean hourly rate of $786 charged by partners and $447 charged by associates among AmLaw 200 firms. Id. ¶ 19.

The Sellers argue that the Vienna Metro matrix is not applicable to this civil action because the Buyer "brought straightforward claims for breach of contract." [Dkt. No. 183] at 8. In support of this argument, the Sellers point to lower hourly rates that were deemed reasonable in the Richmond Division of this district and the Western District of Virginia, but as the Sellers are aware, the relevant community for determining the prevailing rates is the "community in which the court where the action is prosecuted sits." Signature Flight, 730 F. Supp. 2d at 526. The proximity of the Alexandria Division to Washington, D.C. results in higher hourly rates for attorneys practicing in this area than in the areas cited by the Sellers.

The Sellers also cite Salim v. Dahlberg, No. 1:15-cv-468 (LMB/IDD), 2016 WL 2930943 (E.D. Va. May 18, 2016), in which this Court declined to follow the Vienna Metro rates; however, that decision was based on the lack of complexity in a 42 U.S.C. § 1981 action, in which "no unique legal questions were involved" and the "primary evidence concerning liability" was available in a video recording, id. at *6. By contrast, the Vienna Metro matrix is customarily used in complex commercial litigation, such as this civil action, and this Court observed in its previous opinion that this civil action involved "factual complexity and multiple legal issues." GW Acquisition Co., 2023 WL 125018 at *1. Much of that complexity stemmed from the Sellers' counterclaims against the Buyer and third-party claims against the Broker, which attempted to turn a breach of contract case into a fraud case, for which the parties had to engage in extensive discovery. Moreover, this civil action pertained to the multi-million dollar Prince William County Digital Gateway Project. The Sellers' refusal to comply with the terms of the Purchase and Sale Agreements put at risk the Buyer's 800-acre development. Because this

14

civil action cannot be considered a simple commercial case, there is no basis for deviating from the reasonable rates identified in Vienna Metro, which are also at this point over 10 years old and actually reflect lower rates than are currently being billed by attorneys in this area. Given that the Buyer's hourly rates are within the middle of or are below the Vienna Metro matrix rates, the Court finds that the hourly rates of Tucci, Yeretsky, Nagy, and Turner are reasonable.

    2.  Reasonable Hours

Based on the aforementioned rates, the Buyer argues that the appropriate lodestar is $1,010,231.50.[5] The Buyer maintains that this amount is based on a reasonable number of hours expended on this litigation because it reflects the following adjustments: (1) the amount includes fees for the work of only four core attorneys (two partners and two associates), instead of the entire team of 15 lawyers, paralegals, and litigation support personnel, resulting in a discount of $110,000.00; (2) fees relating to summary judgment briefing have been voluntarily reduced by 30%, resulting in a further discount of $73,000.00; and (3) certain time entries have been adjusted or removed to account for time spent on sealing and redactions, resulting in an

---

[5] As the Sellers point out, there are a number inconsistencies in the records the Buyer has provided to support its fee request, which makes it difficult for the Court to discern the number of hours reasonably expended on this litigation. Tucci's declaration provides that the four attorneys for which the Buyer is seeking to recover attorneys' fees worked a total of 2,093 hours, see [Dkt. No. 181-7] ¶¶ 9-12 (providing that Tucci worked "571.5 hours on this matter," Yeretsky worked "1,027 hours on this matter," Nagy worked "317.8 hours on this matter," and Turner worked "177 hours on this matter"); however, the declaration also states that the total number of hours supporting the fee request is 2,390.9, which exceeds the combined hours of those four attorneys, see id. ¶ 15. The revised billing records filed by the Buyer indicate that the total hours expended by the four attorneys on this litigation is 2,085.4. [Dkt. No. 191-1] at 41. Although some of the discrepancies between hours and fee totals may be explained by the voluntary discounts the Buyer applied to its fee request for briefing summary judgment and resolving sealing issues, the Buyer's records are not clear, and the Court will not attempt to aggregate over 500 billing entries to calculate the actual number of hours expended by the Buyer's attorneys. Instead, the Court will use the final attorneys' fee total provided by the Buyer— $1,010,231.50—as the starting point for determining reasonable hours for the lodestar analysis. See [Dkt. No. 191] at 2.

additional discount of $9,467.50. Despite these voluntary reductions, the requested fee amount of $1,010,231.50 does not reflect a reasonable number of hours.

The Sellers point out a number of problems with plaintiff's counsel's time entries.[6] Although the Sellers exaggerate the extent of the problems and the Court does not adopt all of their characterizations of, and objections to, the billing entries, issues of inadequate documentation generally justify a reduction of the fee amount. In particular, a significant number of the billing entries reflect block billing, i.e., they "lump multiple tasks together under a single time entry . . . 'without specifying the amount of time spent on each particular task.'" Route Triple Seven Ltd. P'ship v. Total Hockey, Inc., 127 F. Supp. 3d 607, 621 (E.D. Va. 2015) (quoting Project Vote/Voting for Am., Inc. v. Long, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012)). Block billing "does not provide the court with a sufficient breakdown to meet [the claimant's] burden to support [a] fee request," id. and "prevents an accurate determination of the reasonableness of the time expended," Guidry v. Clare, 442 F. Supp. 2d 282, 295 (E.D. Va. 2006).

The problems presented by the pervasive block billing are compounded by task descriptions that are, at times, vague. See Route Triple Seven, 127 F. Supp. 3d at 621. For example, on March 3, 2022, Yeretsky billed one block of 15.90 hours in which he "research[ed] and analyze[d] applicable law relating to temporary restraining orders, contract interpretation, and specific performance," "continue[d] to study and analyze the relevant documentation and contract documents," communicate with co-counsel and his client, and "work[ed] on petition"

---

[6] Initially, the Buyer's billing invoices were entirely inadequate because of heavy and unnecessary redactions. The Court permitted the Buyer to rectify this issue by refiling properly redacted billing invoices. The Buyer filed revised invoices on March 10, 2023, which contain substantially fewer redactions that appear to be appropriate to protect privileged or protected attorney-client communications and work product.

and "motion for temporary restraining order."  [Dkt. No. 191-1] at 1.  A June 29, 2022 entry for

Nagy shows he worked 8.60 hours "on document collection and review," had "discussions with

Mr. Yeretsky and Mr. Tucci regarding strategy," "develop[ed] MTD [motion to dismiss] reply

arguments," "complete[d] proposed redactions," and "draft[ed] [a] common interest agreement

for Ms. Ghadban," among other tasks.  Id. at 14.  A September 22, 2022 entry for Yeretsky

shows 10.10 hours for "work on proposed stipulation of fact," "work on exhibit and witness list,"

"work on motion for summary judgment," and various "telephone conference[s]" with counsel.

Id. at 29.  A November 8, 2022 entry for Tucci indicated 12.00 hours for "prepar[ing] for

hearing; research regarding arguments; emails with Mr. Ross regarding challenges."  Id. at 39.

Extensive block billing throughout the billing invoices precludes the Court from

accurately assessing the reasonableness of the hours expended by the Buyer's attorneys on

specific tasks.  These concerns are heightened because plaintiff has included work in these

block-billed entries that is not recoverable, such as time spent on recommending an attorney to

Ghadban, who is not the plaintiff, or otherwise assisting third-party defendants in defending

against the third-party claims.  See, e.g., [Dkt. No. 191-1] at 6-7 (Tucci's entries on May 7, 2022,

May 9, 2022, and May 10, 2022).  Plaintiff's attorneys also included time spent on rectifying

redaction issues caused by the Buyer's over-sealing and failure to comply with court orders

regarding sealing.  Although the Buyer has attempted to address this concern by "remov[ing] or

adjust[ing] approximately 30 time & task entries" related to sealing and redactions, these

adjustments are not satisfactory because they are retroactive adjustments, often to block-billed

entries, that are therefore based on estimates.  See, e.g., [Dkt. No. 191-1] at 28, 30-31, 33.

Moreover, even though the Buyer represents that it has included only the hours expended

by Tucci, Yeretsky, Nagy, and Turner in its fee petition and not the entire team of attorneys and

non-attorneys staffed on this matter, the resulting fee request nevertheless reflects an excessive number of hours expended on common tasks throughout this litigation, along with overstaffing and duplication of effort by multiple attorneys.  In calculating the lodestar, "the court must exclude any hours that are 'excessive, redundant, or otherwise unnecessary,' as such hours are not reasonably expended on the litigation." Project Vote/Voting for Am., 887 F. Supp. 2d at 709 (quoting Hensley, 461 U.S. at 434); see Cox v. Reliance Standard Life Ins. Co., 179 F. Supp. 2d 630, 636 (E.D. Va. 2001) (adjusting lodestar based on "duplicative billing" and "award[ing] fees for the time of one attorney when an issue does not require the attention of multiple lawyers").

Although the pervasive block billing makes it difficult for the Court to determine the precise number of hours expended on each task, Tucci's declaration provides a breakdown of the hours expended by the four attorneys on each stage of litigation.  Tucci's summary reflects that plaintiff's counsel spent 279.5 hours on preparing, filing, and serving the Complaint and TRO Motion.  [Dkt. No. 181-7] ¶ 15.  That is an excessive number of hours spent by multiple attorneys on a relatively straightforward 23-page complaint and 15-page TRO motion that focused on the Buyer's breach of contract claim.  The billing invoices reflect over a dozen hours expended by Yeretsky, a partner, on researching vague "issues" related to the TRO, see, e.g., [Dkt. No. 191-1] at 1-3, and Nagy, Yeretsky, and Tucci subsequently expending over 15 hours[7] reviewing the six-page TRO and attempting to resolve service issues, see id. at 4-5.  Tucci's summary indicates that plaintiff's counsel spent 397.9 hours preparing and filing the motion to dismiss the Sellers' counterclaims, and the billing entries also show excessive work, such as duplicative research tasks on the counterclaims, see, e.g., id. at 7-8, and repeated reviews of the

---

[7] Again, because of block billing, this number is merely an approximation based on a review of the billing invoices.

Buyer's and Sellers' memoranda, see, e.g., id. at 9-10, 12-13.  In terms of discovery, although the Court recognizes that plaintiff's counsel engaged in a significant amount of discovery in response to the Sellers' counterclaims, Tucci avers that 725.8 hours were expended on discovery, and during that time, Yeretsky and Nagy both regularly expended upwards of five hours a day on document review and discovery responses, which the Court finds excessive.  See, e.g., id. at 12-14, 16-17, 23.  The billing invoices also reflect dozens of hours on calls and discussions with co-counsel; although attorneys are not to be penalized for actively engaging with their clients and co-counsel, some of these calls appear excessive, such as 1.4 hours on a call and emails to resolve deposition scheduling issues on August 25, 2022, id. at 23.  Plaintiff's counsel also expended 310.4 hours on "[p]rosecuting GWA's claims" and preparing "pre-trial filings," as well as 469.2 hours on briefing summary judgment.  [Dkt. No. 181-7] ¶ 15.  This is an extensive amount of time, and the billing records do not indicate why so much labor was needed to research, draft, and review pretrial and summary judgment filings.  For instance, over 50 hours of entries relate to preparing stipulations of fact and exhibit and witness lists, which were not overly complex.  See [Dkt. No. 191-1] at 26-29.  The excessive hours expended by plaintiff's counsel are not limited to these examples but appear throughout the billing records.

Because of the block billing, it is not practical or possible for the Court to sift through the over 500 entries and determine the exact number of hours that should be reduced for each task to remove excessive or duplicative labor, and accordingly an across-the-board percentage reduction is appropriate.  See Signature Flight Support Corp., 730 F. Supp. 2d at 524.  In light of the aforementioned issues with block billing, unrecoverable time, and excessive and duplicative work, the Court finds that an overall reduction of 20% of the initial amount yields a reasonable fee request, resulting in a lodestar of $808,185.20.

### 3.  Adjustment for Novelty and Skill (Factors 2 and 3)

The Sellers argue that the fee request must be reduced because the "litigation was not complex," as it involved "one term of a single Purchase and Sale Agreement." [Dkt. No. 183] at 26. The Sellers contend that they were only one of the sellers involved in GWA's assemblage for the Prince William County Digital Gateway Project, and "[t]here was no evidence of delay or threat of delay" because of its missing signature on the rezoning form. Id. at 26. The Sellers further argue that "counsel did not need to expend much effort in this action," as evidenced by their "minimal participation in discovery aside from churning their own internal bills while thwarting cooperation with counsel[.]" Id. at 26-27. The Sellers assert that "[n]ot long after filing this litigation . . . GWA had received assurances from Brower that he would cooperate with the rezoning process and could have ended the litigation there," but the Buyer "chose to continue litigating already-resolved claims," proceeded to summary judgment, and "sought to participate in trial on these claims." Id. at 3.

The Sellers misrepresent the history of this litigation by attempting to portray the Buyer as unnecessarily driving up costs and prolonging this civil action.[8] It is disingenuous for the Sellers to assert that "not long after filing this litigation," plaintiff received "assurances from Brower that he would cooperate with the rezoning process" and could have "ended the litigation" but needlessly continued to prosecute its claims. Id. To the contrary, a month and a half after

---

[8] The Sellers also maintain that "multiple counts involved a title issue that had resolved before GWA filed this litigation," [Dkt. No. 183] at 2, but that assertion is false. The Buyer's claims related in part to a title issue with the Purchase and Sale Agreement executed on behalf of Barbara Brower. That title issue was resolved only after the Buyer filed this civil action and obtained the TRO, after which the Sellers signed an Amendment of the Pageland Purchase Agreement and Termination of the Barbara Brower Purchase Agreement which resolved that defect. As the parties stipulated, Brower "did not sign the draft Amendment of the Pageland Purchase Agreement and Termination of the Barbara Brower Purchase Agreement prior to GWA filing a lawsuit on March 8, 2022." See [Dkt. No. 110] ¶¶ 19, 20, 23, 39.

the Buyer obtained the TRO after which the parties engaged in attempts to settle this civil action,

the Sellers pulled out of settlement discussions and filed five counterclaims against the Buyer

alleging fraud, among other claims, and seeking both a declaration that the Purchase and Sale

Agreements were voidable and damages of not less than $4.6 million.  The Sellers'

counterclaims reflected an attempt to rewrite the terms of the Purchase and Sale Agreements and

obtain millions of additional dollars from the Buyer, which hardly constitutes providing the

Buyer with an "assurance" of cooperation.  The counterclaims required the Buyer to incur

significant additional costs to defend against those claims, including the need to respond to

discovery requests served by the Sellers until the Buyer's motion to dismiss the counterclaims

was granted on July 12, 2022.  After the Buyer successfully obtained dismissal of the

counterclaims, settlement negotiations were once again unsuccessful.  The Sellers cannot place

the blame for the failure of settlement efforts entirely on the Buyer because it appears that neither

side seriously engaged in settlement negotiations.  After the parties failed to settle, it was

reasonable for the Buyer to seek summary judgment.

　　　　Although there is some merit to the Sellers' argument that the Buyer's affirmative claims

were relatively straightforward breach of contract claims, the Sellers were the party that injected

complexity into this civil action with their counterclaims—alleging fraud, civil conspiracy,

unjust enrichment, and tortious interference with contract—and resulting discovery requests, for

which the Buyer reviewed and prepared over 46,000 documents for production, which

substantially increased the costs of this litigation.  Accordingly, the Court will not reduce the

lodestar based on novelty and skill, given that the Court has already reduced the requested fee

amount by 20% to account for excessive hours and duplicative work.

4.  Adjustments for Results Obtained, Unsuccessful Claims, and Degree of Success (Factor 8)

The Sellers further argue that the fee amount should be reduced because the Buyer did not prevail as to Counts II, IV, VI, and VII against Barbara Brower, or as to Count III for specific performance against Pageland LLC. "'[T]he most critical factor' in calculating a reasonable fee award 'is the degree of success obtained,'" because "when 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.'" Brodziak v. Runyon, 145 F.3d 194, 196 (4th Cir. 1998) (quoting Hensley, 461 U.S. at 436). And, "[i]t is well-settled in Virginia that 'under contractual [fee-shifting] provisions a party is not entitled to recover fees for work performed on unsuccessful claims.'" Zoroastrian Ctr., 822 F.3d at 754.

The Supreme Court has "explicitly rejected the notion that a court may calculate an award of attorneys' fees by means of a purely mathematical comparison between the number of claims pressed and the number prevailed upon"; "[r]ather, the appropriate inquiry concerns whether the claims on which the plaintiff prevailed are related to those on which he did not." Brodziak, 145 F.3d at 196-97. Specifically, a plaintiff is not entitled to attorneys' fees for unsuccessful claims that are unrelated to the successful claims. But when "all claims 'involve a common core of facts . . . much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.'" Id. (quoting Hensley, 461 U.S. at 435). In such cases, the Court should "consider the relationship between various claims . . . and the degree of overall success obtained," id., as well as "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the

22

litigation."[9] Hensley, 561 U.S. at 435; see Best Medical Int'l Inc. v. Eckert & Ziegler Nuclitec GmbH, 565 F. App'x 232, 238 (4th Cir. 2014).  Lastly, in evaluating the degree of success between successful and unsuccessful claims, the Fourth Circuit has instructed courts to "view the entirety of the suit objectively," without consideration of the plaintiff's subjective motives in pursuing the litigation.  Western Insulation, LP v. Moore, 362 F. App'x 375, 381 (4th Cir. 2010).

The Buyer argues that it "achieved success at every stage of his litigation," and that because all of its claims are united by a common core of facts, it is futile to attempt to separate out the fees associated with litigating each claim.  [Dkt. No. 181] at 19, 23.  Instead, the Court should focus on the significance of the overall relief obtained in relation to the reasonable hours expended.  The Buyer contends that it achieved its "primary objectives" in this litigation, specifically obtaining injunctive and declaratory relief, as well as recovery of the attorneys' fees it incurred to enforce defendants' compliance with the Purchase and Sale Agreements.  Id. at 11-12.  The Buyer points to its voluntary reduction of fees relating to summary judgment by 30%, resulting in a discount of approximately $73,000, as evidence of its "reasonableness."  Id. at 27.

The Buyer further argues that all of its affirmative claims are united by core facts and that separating out the work performed as to each claim is difficult; nevertheless, Virginia law does

---

[9] In Zoroastrian Center, 822 F.3d 739, the Fourth Circuit observed in a footnote that the Virginia Supreme Court has "steadfastly rejected" the approach of federal courts which allows "a prevailing party to recover fees for unsuccessful claims where the entire case 'involve[s] a common core of facts or . . . related legal theories,'" id. at 754 n.8 (quoting Hensley, 461 U.S. at 435).  The Fourth Circuit cited the Virginia Supreme Court's decision in Ulloa, 624 S.E.2d 43, which reversed an attorneys' fee award that was based in part on an unsuccessful claim.  The Virginia Supreme Court reasoned that the prevailing party was "not entitled to recover any amount of attorneys' fees associated with prosecuting that claim" and that the prevailing party was not "relieved of the burden to establish to a reasonable degree of specificity those attorneys' fees associated with its breach of contract claim," which was the successful claim, "simply because all of [the prevailing party's] claims 'were intimately intertwined and depended upon a common factual basis.'" Id. at 50.

not permit recovery of fees for unsuccessful claims. See Zoroastrian Ctr., 822 F.3d at 754 & n.8;

W. Square, L.L.C., Inc., 649 S.E.2d at 702.  Bearing in mind the success and results obtained in

this litigation, the Court will further reduce the fee amount to account for the unsuccessful claims

and the overall degree of success achieved by the Buyer in litigating this civil action.

Specifically, the Buyer was fully successful in obtaining the injunctive and declaratory

relief sought at the onset of this litigation at the TRO stage (securing defendants' execution of

the rezoning forms) and at summary judgment (obtaining a declaration that Pageland LLC is

required to cooperate with the rezoning process going forward).  Even though the Buyer did not

obtain judgment in its favor on Count III for specific performance against Pageland LLC because

that claim had been mooted by the TRO, the dismissal on mootness grounds does not impact the

Buyer's overall success because it obtained the injunctive relief sought in Count III from the

TRO (i.e., the signing of the rezoning forms).  The Buyer also prevailed on its breach of contract

claim against Pageland LLC (Count V), thereby becoming entitled to recover its attorneys' fees

and costs incurred to enforce its contracts with the Sellers.  Moreover, the Buyer was fully

successful in defending against the Sellers' counterclaims by obtaining a dismissal of all of them

at the motion to dismiss stage for failure to state a claim upon which relief may be granted.

Nevertheless, the Buyer's original and Amended Complaint sought damages in excess of

$75,000, and ultimately the Buyer only obtained $10.00 in nominal damages because actual

damages were too speculative.  Moreover, the Buyer's claims against Barbara Brower were

generally unsuccessful because they were in part dismissed on the grounds that she was not the

proper defendant, although the Court alternatively found that the TRO and claims against

Pageland LLC mooted or duplicated the specific performance and breach of contract claims

against her.  As for the breach of duty of good faith and fair dealing claim asserted against

Barbara Brower, that claim was dismissed at summary judgment because there was no evidence of bad faith.  Finally, the Buyer did not voluntarily dismiss its tortious interference with contract claim against Brower until near the close of discovery.

For these reasons, a reduction of 10% of the lodestar is appropriate and will result in an award of $727,366.68 in attorneys' fees.

## III. COSTS

Finally, the Buyer seeks to recover $9,378.22 in costs, which consist of the following expenses:

| Type of Cost | Costs Incurred |
|---|---|
| Filing Fee | $402.00 |
| Service and notice related costs | $1,941.62 |
| Research | $2,160.00 |
| Deposition Transcripts | $4,874.60 |
| Total: | $9,378.22 |

[Dkt. No. 181-7] at 7.  These costs are verified by the billing invoices.[10]  See [Dkt. No. 180].

The Sellers oppose any award of costs, first arguing that under 28 U.S.C. § 1332(b), the Court "may deny costs to the plaintiff" where the plaintiff "is finally adjudged to be entitled to recover less than the sum or value of $75,000."  Contrary to the Sellers' argument, § 1332(b) is not an absolute bar to recovery of costs when recovered damages do not exceed $75,000 but generally applies to cases in which a plaintiff lacks a good faith basis for alleging damages exceeding the amount in controversy and is intended to prevent abuses of diversity jurisdiction.  See Lutz v. McNair, 233 F. Supp. 871, 873-74 (E.D. Va. 1964); Pupkar v. Tastaca, 999 F. Supp. 644 (D. Md. 1998) ("The question . . . is whether defendant has established as a matter of law

---

[10] "[N]otice related costs" are undefined.  Costs associated with service total approximately $1,812.48, and "notice related costs" are $129.14.

that plaintiff necessarily acted in bad faith in seeking at least $75,000."); Perlman v. Zell, 185

F.3d 850, 859 (7th Cir. 1999) (explaining that § 1332(b) stands for the principle "that if the

outcome shows that the case did not belong in federal court, then costs may be denied or

shifted"). In this case, there is no evidence that the Buyer acted in bad faith in seeking at least

$75,000 in damages and filing this action in federal court; therefore, there is no reason to deny

costs under § 1332(b). See Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc., 173

F.3d 863, at *3 (10th Cir. 1999) (unpublished table decision) (observing that § 1332(b) "leaves

the determination on allocation of costs to the discretion of the judge" and "does not preclude an

award of costs if the district court determines that a plaintiff was acting in good faith when it

invoked diversity jurisdiction, in spite of a limited recovery"); Peden v. Louisiana-Pac. Corp., 47

F. App'x 494, 496 (9th Cir. 2002) ("When a diversity plaintiff prevails on a claim, but the

damages turn out to be less than $75,000, the district court has discretion either to deny the

plaintiff costs . . . or to award costs to the opposing party.").

Next, the Sellers argue that the Buyer is only permitted to recover the taxable costs

outlined in 28 U.S.C. § 1920, and accordingly costs for service, research, and deposition

transcripts must be excluded. This argument is unavailing. The Buyer is not seeking costs under

28 U.S.C. § 1920 but pursuant to the Purchase and Sale Agreement, which provides that the

"prevailing party shall be entitled to recover . . . costs and disbursements, court costs and the cost

of any expert witnesses retained by that party (in addition to any other relief to which the

prevailing party may be entitled)." [Dkt. No. 128-2] § 21.4. Virginia allows a prevailing party

to recover expenses from the opposing party if the parties' contract provides for a cost-shifting

arrangement. See Coady, 515 S.E.2d at 275. Although the Court cannot tax costs outside of the

categories enumerated in 28 U.S.C. § 1920, that provision does not constrain the Court's ability

to award reasonable costs pursuant to the parties' contract. See C-Tech Corp. v. Aversion Techs., Civil Action No. DKC 11-0983, 2012 WL 3962508, at *7 (D. Md. Sept. 7, 2012) (reasoning that if the provision in the relevant contract providing for recovery of "'reasonable costs of . . . litigation' . . . were interpreted to be limited to those costs available pursuant to statute or rule, the provision would be rendered superfluous" (emphasis in original)). The Sellers are therefore obligated by the Purchase and Sale Agreement to pay the costs incurred by the Buyer in litigating this civil action.

Other than these two unsuccessful arguments, the Sellers do not contest the reasonableness of the costs incurred by the Buyer or any specific sums. Because the costs do not appear to be unreasonable, they will not be reduced, and the Buyer will be awarded the full amount of $9,378.22.

## IV. CONCLUSION

For the reasons stated above and by an Order to be issued with this Memorandum Opinion, Plaintiff GW Acquisition Co., LLC's Motion for Attorneys' Fees and Costs [Dkt. No. 180] will be granted in part, and plaintiff will be awarded $727,366.68 in attorneys' fees and $9,378.22 in costs. The Buyer requests that the Sellers pay the awarded attorneys' fees and costs within 30 days, but the Sellers request that the award "be ordered payable only after the [p]arties have exhausted all appeals." [Dkt. No. 192] at 7. Pursuant to Fed. R. Civ. P. 62(b), a stay of the execution of judgment will be granted only if the Sellers post an acceptable bond or cash to secure the payment.

Entered this 5 day of May, 2023.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge